Anton N. Handal (Bar No. 113812)
tony.handal@gmlaw.com
Gabriel G. Hedrick (Bar No. 220649)
gabriel.hedrick@gmlaw.com
Lauren G. Kane (Bar No. 286212)
lauren.kane@gmlaw.com
GREENSPOON MARDER LLP
One Columbia Place
401 West A Street, Suite 1150
San Diego, CA 92101
Tel: (619) 544-6400
Fax: (619) 696-0323

Attorneys for Plaintiffs
H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.I.S.C., INC. and DEPALMA ENTERPRISES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> FRANMAR INTERNATIONAL IMPORTERS, LTD.; MARIA RAJANAYAGAM; and RAVI INDUSTRIES LIMITED, <br><br> Defendants. | Case No. 3:16-cv-00480-BEN-WVG <br><br> **PLAINTIFFS' BRIEF RE: DISCOVERY DISPUTE OVER DEFENDANTS' SUBPOENAS TO QVC, INC.** |

# TABLE OF CONTENTS

I.   INTRODUCTION ..................................................................................1

II.  PROCEDURAL HISTORY ..................................................................3

III. ARGUMENT .........................................................................................7
   A. DEFENDANTS' SUBPOENA FOR PRODUCTION OF DOCUMENTS SHOULD BE QUASHED FOR FAILURE TO COMPLY WITH FRCP 45 AND THE PARTIES' EXPRESS AGREEMENTS ..................................................................................7

   B. DEFENDANTS' PROPOSED DEPOSITIONS OF QVC SHOULD BE QUASHED AS UNNECESSARY, UNDULY BURDENSOME, AND HARASSING AND FOR FAILURE TO ABIDE BY THE PARTIES' AGREEMENTS ...........................10

   C. PLAINTIFFS REITERATE AND RE-OFFER THEIR PROPOSED COMPROMISE ...........................................................12

IV.  CONCLUSION ....................................................................................12

# **TABLE OF AUTHORITIES**

**CASES**

*Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis,* 220 F.3d 898 (8th Cir.2000) ..................................................................................................8

*Martinez v. Target Corp.* 278 F.R.D. 452 (D.Minn. 2011) ..................................7, 8

*Mireskandari v. General Trust PLC*, 2013 WL 12114761 (C.D. Cal. Sept. 23, 2013) ..............................................................................................................................7

**RULES**

Federal Rules of Civil Procedure 45..............................................................................7

**OTHER AUTHORITIES**

FRCP 45, Advisory Committee Notes to 2007 Amendment .....................................7

Pursuant to the instruction of the Court, Plaintiffs, H.I.S.C., Inc. and DePalma Enterprises, Inc. (collectively, "Plaintiffs") submit the following brief in relation to the parties' dispute over Defendants' subpoenas to third party QVC, Inc.

## I. INTRODUCTION

Plaintiffs are sellers of home gardening products, which products include a number of broom products made from a material called ekel, which is derived from the coconut tree. Ekel brooms have been made and used for generations throughout South Asia, including Vietnam, Indonesia, Maldives and Sri Lanka, among others. Beginning in early 2012, Plaintiffs began sourcing their brooms wholesale from Defendant Franmar International Importers, Ltd. ("Franmar"), a Canadian company based in Vancouver, B.C. Franmar, in turn, imported the brooms from Ravi Industries, Ltd., a Sri Lanka company, which manufactured the brooms. Brooms similar, if not identical, to the brooms manufactured by Ravi have been available in Sri Lanka and worldwide for many years, even before Franmar began purchasing its brooms from Ravi.

Beginning in 2013, Plaintiffs began selling the above-referenced ekel brooms to QVC, Inc., which Plaintiffs had been doing with respect to some of its other home and garden products for well over 20 years. Plaintiffs began using their "Ultimate Innovations" brand on QVC in 2011. Plaintiffs' Vice President Roxanne DePalma regularly appears on QVC to help sell Plaintiffs' gardening products using their Ultimate Innovations brand, including the disputed ekel broom and related ekel broom products. QVC is one of Plaintiffs' largest customers and is their largest single customer for the disputed ekel broom products.

In 2015, unbeknownst to Plaintiffs until discovery in this matter, Defendants began backchannel communications with QVC in an attempt to usurp Plaintiffs' corporate opportunities with QVC for themselves. Specifically, without ever notifying Plaintiffs, Defendants notified QVC that they would no longer be supplying ekel brooms to Plaintiffs and advised QVC that it should begin buying

-1-

1  the ekel brooms from Defendants. On July 25, 2015, when Defendants believed
2  they had successfully stolen Plaintiffs' QVC business, Defendants sent a letter to
3  Plaintiffs notifying them that Defendants would no longer be supplying brooms to
4  Plaintiffs and wrongfully demanding that Plaintiffs cease all sales of products that
5  they had already rightfully purchased from Franmar.

6  Faced with the loss of the supplier of one of their popular product lines,
7  Plaintiffs did what any other business person would do – they looked for a new
8  source. Once a new manufacturer was located, Plaintiffs modified the design of
9  the broom – making it larger, adding a hole and loop in the handle so that it could
10 be hung on a hook for easy storage, and creating a new label design emphasizing
11 the "Ultimate Garden Broom" product name and their Ultimate Innovations brand.
12 Plaintiffs began selling the newly designed broom, and related products,
13 throughout the U.S. and continue to do so today.

14 Shortly after Plaintiffs began selling their new Ultimate Garden Broom,
15 Defendants began sending meritless cease and desist letters to Plaintiffs and
16 several of its customers, including QVC. In fact, Defendants continue to contact
17 Plaintiffs' customers to this day, expressly accusing Plaintiffs of selling a
18 "knockoff" of Defendants' broom and asking those customers to buy their brooms
19 from Defendants instead.

20 In the meantime, other un-related companies have sold and continue to sell
21 brooms substantially similar, if not identical, to Plaintiffs' and Defendants'
22 respective brooms. However, to date, the only U.S. parties Defendants have
23 formally accused of infringing any alleged intellectual property right related to
24 Defendants' brooms is Plaintiffs.

25 Because of Defendants' continued harassment of Plaintiffs and their
26 customers with meritless claims of patent infringement, trademark infringement,
27 trade dress infringement, copyright infringement and other vaguely-specified
28 intellectual property rights, Plaintiffs were forced to file the instant action for

1 declaratory relief and State law claims of unfair business practices and tortious
2 interference with prospective economic advantage.

3 **II. <u>PROCEDURAL HISTORY</u>**

4 Plaintiffs filed this action on February 23, 2016. The matter languished for
5 some time while Plaintiffs attempted to effect service on foreign defendant Ravi
6 Industries, Ltd. ("Ravi") pursuant to the Hague Convention. Service was
7 eventually confirmed and Ravi defaulted. Default judgment was recently entered
8 against Ravi, including a judgment of invalidity as to a Ravi patent that Defendants
9 had wrongly accused Plaintiffs of infringing in various communications with
10 Plaintiffs' customers.

11 After a further pause to allow the parties to explore the possibility of
12 settlement, which was unfruitful, the Court entered a scheduling order in December
13 2017. Discovery cutoff is currently set for June 1, 2018.

14 On August 4, 2017, the parties exchanged initial disclosures. Both parties
15 named certain identified and unknown representatives of QVC as potential
16 witnesses under FRCP 26(A)(1)(i). However, during the deposition of Plaintiffs'
17 President, Robert DePalma, on February 16, 2018, a dispute arose regarding the
18 identification of Plaintiffs' contacts at QVC and certain Flower and Garden Shows.
19 As a compromise, Plaintiffs agreed to provide an identification of Plaintiffs'
20 business contacts at QVC and various flower and garden shows in response to a
21 single interrogatory to be propounded by Defendants. Given the highly sensitive
22 nature of Plaintiffs' business contacts and the related business relationships and
23 given Defendants' prior history of conduct with Plaintiffs' customers, including
24 QVC, as described in part above, Plaintiffs agreed to do so subject to certain
25 conditions, which were agreed to by defense counsel. Specifically, counsel agreed
26 as follows:

27   MS. FLYER: **<u>Counsel has agreed I can ask one
28 interrogatory asking for HISC DePalma's contacts at QVC</u>** and at
the trade shows, and he will not object that it's not compound and that

it's over the amount of interrogatories we're permitted to ask.

Is that accurate?

MR. HANDAL: Yes. And then we will answer attorney's eyes only. But because of the highly sensitive nature, you are to -- **on the condition that you are to let me know if you will want to make an attempt to contact any of those individuals, because, clearly, third-parties in this business, subpoenas, and things of that nature, are very business disruptive**.

I will do the same, courtesy to you, with respect to your client. And if I ask you for that information, you will provide that information to me with respect to your client's contacts. It will be marked attorney's eyes only. I will not disclose it to my client, **and I will not reach out to your client's business contacts without first contacting you and discussing that contact with you in advance**.

**Is that agreed?**

**MS. FLYER: Agreed.**

(Transcript of Deposition of Robert DePalma, pp. 174:9-175:6, relevant portions of which are filed herewith as Exhibit A.) (Emphasis added.)

Defendants propounded the referenced interrogatory and, within fourteen (14) days, Plaintiffs responded, identifying Jenne Frankleton as their contact at QVC.

On Wednesday, April 18, 2018, the undersigned received an email from defense counsel David Flyer, stating, among other things, "Attached is a proposed amended stipulation for protective order to accommodate QVC." Confused, plaintiffs' counsel immediately responded, asking what the email was referring to and asking whether a subpoena had been served on QVC. Before hearing back from Mr. Flyer, plaintiffs' counsel was able to speak with in-house counsel for QVC, who confirmed that Defendants had served six subpoenas on QVC, including the aforementioned Jenne Frankleton.

Plaintiffs' counsel then quickly emailed defense counsel that same day, objecting to the subpoenas on the basis of Defendants' failure to comply with Rule 45(a)(4) of the Federal Rules of Civil Procedure and for failing to honor the agreement quoted above. At around the same time, defense counsel emailed

-4-

1 Plaintiffs copies of the disputed subpoenas. True and correct copies of the
2 subpoenas along with the "Notice of Depositions" provided to Plaintiffs' counsel
3 are filed herewith as Exhibits B-H. Defense counsel followed up with another
4 email, which entirely ignored Plaintiffs' objections and responded only that he
5 would like a phone call to discuss amending the protective order. Plaintiffs'
6 counsel responded that the outstanding issues related to the subpoenas need to be
7 addressed first.

After reviewing the proofs of service attached to Defendants' Notice of Depositions, I learned that Defendants purportedly served copies of the subpoenas on April 11 or April 12 at Plaintiffs' counsel's old business address. (*See* Exhibit B, Proof of Service attached to Notice of Depositions.) This is not the first time defense counsel has served the wrong address and I had previously notified Mr. Flyer of service at the wrong address in response to a previous deposition notice. A true and correct copy of said email is attached hereto as Exhibit I. The proof of service of the subpoenas also claims that Plaintiffs' counsel was emailed copies of the subpoenas on April 11, 2018. However, no attorney identified in the proof of service received any such email.

Defendants, apparently after meeting and conferring with QVC, withdrew their subpoenas for production of documents to the individual QVC witnesses and served a new subpoena to QVC's custodian of records on or about April 18, 2018. Plaintiffs' counsel received notice of the new subpoena, not from Defendants, but from counsel for QVC after the subpoena was served, once again in violation of FRCP 45(a)(4). A true and correct copy of the subpoena to QVC's custodian of records is attached hereto as Exhibit J.

Subsequent meet-and-confer correspondence followed between counsel in this matter and with counsel for QVC. The parties finally met and conferred by telephone on Thursday, April 26, 2018. The parties essentially repeated their previous positions. However, in a last ditch effort to resolve the parties' dispute,

Plaintiffs' offered to produce the documents requested in Defendants' four requests for production to QVC and to stipulate to their authenticity if Plaintiffs would withdraw *all* subpoenas to QVC.[1] Defense counsel responded that it would only withdraw its deposition subpoena to QVC's custodian of records in exchange for the concession, but that he intended to move forward with the depositions of the individual witnesses.

When Plaintiffs' counsel asked Mr. Flyer what information he intended to obtain from the QVC witnesses that would not already be contained in the document production, Mr. Flyer pointed to the topics identified in Defendants' initial disclosures, which identifies the following topics, "Interactions with Plaintiffs and Defendants, and/or their agents, concerning sales of respective brooms at issue." However, this is precisely what is requested in the document subpoena, wherein Defendants request:

1) "All documents relating to purchases of Ultimate Garden Broom by number of brooms and dollar amounts from Plaintiffs from May 1, 2015 to present";
2) "All documents relating to the decision to cancel Original Garden Broom after May 1, 2015";
3) "All documents relating to correspondence and communications generated by Plaintiffs, including but not limited to Roxanne DePalma and/or Robert DePalma which mention Maria Rajanayagam";
4) "All documents relating to shipping and bills of lading which relate to deliveries of the Ultimate Garden Broom to QVC, Inc., and/or its warehouses, from Plaintiffs from May 2, 2015 to the present."

(*See* Exhibit J.)

Plaintiffs' counsel pointed this out to Mr. Flyer and stated its position that any deposition of the QVC witnesses would be unnecessarily duplicative of the document production and unduly harassing of the QVC witnesses. Mr. Flyer nevertheless stood by his refusal to withdraw the deposition subpoenas.

---

[1] Defendants' characterization of Plaintiffs' proposal is false. The proposal was never limited to just QVC's custodian of records.

Accordingly, Plaintiffs withdrew their proposed compromise and the parties proceeded to contact the Court to resolve the dispute.

During the discussion with the Court clerk, Plaintiffs proposed a modification to their earlier proposal, offering to withdraw their objection to QVC producing the requested documents and to stipulate to the authenticity of any documents produced in exchange for Defendants' withdrawal of the deposition subpoenas. In Plaintiffs' view, this modified proposal would alleviate any doubt on Defendants' part, if any, that Plaintiffs could not provide all of the documents requested, some of which might be exclusively in QVC's possession. This proposal was reiterated to Mr. Flyer by email the following day, but Defendants stood by their original position.

## III. ARGUMENT

### A. DEFENDANTS' SUBPOENA FOR PRODUCTION OF DOCUMENTS SHOULD BE QUASHED FOR FAILURE TO COMPLY WITH FRCP 45 AND THE PARTIES' EXPRESS AGREEMENTS

FRCP 45(a)(4) provides:

"*Notice to Other Parties Before Service.* If the subpoena commands the production of documents, electronically stored information, or tangible things or the inspection of premises before trial, then **before it is served on the person to whom it is directed, a notice and a copy of the subpoena must be served on each party**."

(Boldface and underline added.) A court may quash a subpoena for failure to comply with the notice requirement of FRCP 45(a)(4). *See Mireskandari v. General Trust PLC*, 2013 WL 12114761, at *3 (C.D. Cal. Sept. 23, 2013) (citing to former version FRCP 45(b)(1)) and *Martinez v. Target Corp.* 278 F.R.D. 452, 453 (D.Minn. 2011); *see also* FRCP 45, Advisory Committee Notes to 2007 Amendment ("Courts ... have tended to converge on an interpretation that requires notice to the parties before the subpoena is served on the person commanded to produce or permit inspection. That interpretation is adopted in amended Rule 45(b)(1) [now (a)(4)] to give clear notice of the general present practice");

Advisory Committee Notes to 1991 Amendments ("The purpose of such notice is to afford other parties an opportunity to object to the production or inspection, or to serve a demand for additional documents or things.... [O]ther parties may need notice in order to monitor the discovery and in order to pursue access to any information that may or should be produced").

To the extent Defendants may argue that Plaintiffs have not been prejudiced because they received notice of the subpoenas in time to object, this does not preclude an order quashing the subpoena. The defendant in *Martinez v. Target Corp.*, *supra*, raised a similar argument to no avail. The Court there found:

> Target contends its subpoena should not be quashed because Ms. Martinez has shown no prejudice. Target's argument misses the point. The prejudice to Ms. Martinez is anticipated by the existence of Rule 45(b)(1). Therefore, it is proper to quash the subpoena. *Firefighter's Institute for Racial Equality ex rel. Anderson v. City of St. Louis,* 220 F.3d 898, 903 (8th Cir.2000) (holding that quashing a subpoena was proper where serving party failed to provide notice to another party).

Similarly, here, Defendants' failure to comply with FRCP 45 should not be excused, even if Defendants' attempt to serve Plaintiffs at a wrong address were innocent, particularly where Plaintiffs had notified Defendants of a similar error in the past and notified defense counsel of the correct address.

More importantly, Defendants' subpoena should be quashed for failing to comply with the parties' agreement to discuss any contact with the opposing parties' customers before making any attempt at contact. (*See* Exhibit A at 174:9-175:6.) As discussed at length above, the Parties have a long history when it comes to QVC, which is a particularly sensitive issue with respect to Plaintiffs. Defendants went behind Plaintiffs' back to take Plaintiffs' QVC business for their own and sent multiple meritless cease and desist letters to QVC in an attempt to disrupt Plaintiffs' relationship with QVC. Moreover, QVC is Plaintiffs' largest single customer for the disputed brooms and Defendants know this. It is for these very reasons that Plaintiffs' counsel insisted on the concession from defense counsel that the parties enter into a discussion before any contact with the other

-8-

1 party's customers.

2 Defendants' position that QVC and the subject witnesses were already
3 identified in Defendants' initial disclosures is of no moment. Defense counsel
4 agreed to the aforementioned pre-subpoena procedure and no exception was made
5 for witnesses whose identities may already be known. Moreover, Plaintiffs'
6 counsel stated explicitly that the proposed agreement was motivated by the highly
7 sensitive nature of Plaintiffs' relationships with its customers and the potential that
8 contact, by subpoena or otherwise, is liable to disrupt those sensitive business
9 relationships. Again, defense counsel did not object and agreed to this
10 precautionary procedure, which is mutual and applies equally to Defendants'
11 customers.

12 Defendants' position that the subject agreement did not relate to QVC has
13 even less merit. The agreement arose directly out of Defendants' request for
14 Plaintiffs' business contacts at QVC and Ms. Flyer's recitation of the Parties'
15 agreement specifically references QVC. (*See* Exhibit A at 174:9-175:6.)

16 This is not the first time Defendants have failed to honor agreements with
17 opposing counsel. The Court may recall that at the ENE in this matter, the parties
18 agreed, and the Court instructed, that neither party disparage the other. Plaintiffs'
19 counsel later brought it to the Court's attention that Defendants had thereafter
20 contacted one of Plaintiffs' customers accusing Plaintiffs of selling a "knockoff" of
21 Defendants' broom and inviting the customer to buy brooms from Defendants
22 instead. Defendants responded with the absurd position that telling Plaintiffs'
23 customers that Plaintiffs' broom is a "knockoff" is not a disparagement. Their
24 position on the present issue before the Court is equally untenable for the reasons
25 set forth above.

26 Although the Parties have subsequently met-and-conferred regarding the
27 QVC subpoenas to no avail, this does not remove the taint caused by Defendants'
28 violation of the parties' agreement and the disruption caused by Defendants'

-9-

1  contact of Plaintiffs' largest customer without affording Plaintiffs an opportunity to
2  at least discuss the matter with QVC in advance, let alone seek to avoid the
3  disruption by seeking an advance compromise. These are precisely the concerns
4  that expressly gave rise to the agreement in the first place. Accordingly,
5  Defendants' subpoena for production of documents to QVC should be quashed.

### B. DEFENDANTS' PROPOSED DEPOSITIONS OF QVC SHOULD BE QUASHED AS UNNECESSARY, UNDULY BURDENSOME, AND HARASSING AND FOR FAILURE TO ABIDE BY THE PARTIES' AGREEMENTS

With respect to Defendants' deposition subpoenas to QVC employees, Defendants likewise failed to honor their aforementioned agreement with Plaintiffs. The subpoenas should be quashed for the same reasons set forth above.

In addition, Defendants' deposition subpoenas are unnecessarily duplicative, burdensome and harassing as to QVC. Defendants assert counterclaims against Plaintiffs for trade dress infringement and for unfair competition arising out of Defendants' meritless allegations that Plaintiffs' "Ultimate Garden Broom" product infringes Defendants' alleged trade dress and its alleged "Garden Broom" and "The Original Garden Broom" marks. (*See* ECF No. 14 at pp. 11, *et seq*.) No party alleges that QVC had any role in designing or manufacturing Plaintiffs' "Ultimate Garden Broom" product.[2] The only information that QVC may have that has any relevancy to this case is how many brooms it bought from Plaintiffs, information that could be provided in document form. No testimony is required to supplement such document production, particularly where Plaintiffs have offered

---

[2] Defendants' assertion that they seek to learn why QVC "discontinued its relationship with Franmar after having worked closely with Franmar for two years" is completely without merit. None of Defendants' counterclaims touch on the issue of Franmar's alleged relationship with QVC. Its unfair competition claims are expressly limited to issues of alleged trade dress and trademark infringement. (*See* ECF No. 14 at ¶¶ 42-49, 51-53, 55-61 and 62-63.) Moreover, Defendants did not identify this topic in its initial disclosures. *See* Exhibit A to Defendants' Brief (ECF No. 87.)

-10-

to stipulate to the authenticity of any produced documents. Forcing QVC employees to take time out of their day to sit for a deposition can therefore only be considered harassment.

Defense counsel claims that he can complete all four depositions within a day, but he is not required to. Notwithstanding defense counsel's representation of what he *thinks* he can do, nothing prevents him from deposing each witness for the full 7 hours allowed under the Federal Rules. Moreover, defense counsel has indicated that he intends to take the depositions remotely via video conference. So, while the witnesses will be forced to travel to a third party Court reporter's office, defense counsel will be afforded the luxury of deposing the witnesses from the comfort of his own office. The balance of the burden on the QVC witnesses is therefore significant.

That Defendants' subpoenas of QVC are designed for no other reason than to burden and harass Plaintiffs' biggest customer is further demonstrated by the fact that (1) Plaintiffs have already disclosed their revenues in discovery and (2) Defendants have not subpoenaed any other customer of Plaintiffs. Any information that may be provided by QVC is only going to provide Defendants with a partial picture of Plaintiffs' sales and is therefore not likely to provide Defendants with any independent insight into the revenue numbers already provided by Plaintiffs in discovery.

Moreover, there is no reason that Defendants need to depose three separate witnesses from QVC. Some of the witnesses subpoenaed, including Rich Yoegel, whom Plaintiffs are informed and believe is QVC's Vice President of Merchandising, are not likely to have any discoverable information related to the amount of disputed brooms QVC has purchased from Plaintiffs. These subpoenas are therefore intended for no other reason than to damage Plaintiffs' relationship with its largest customer.

For the foregoing reasons, Plaintiffs respectfully request that Defendants'

*PLAINTIFFS' BRIEF RE: QVC DISCOVERY DISPUTE*  Case No. 3:16-cv-00480-BEN-WVG

deposition subpoenas of QVC be quashed.

### C. PLAINTIFFS REITERATE AND RE-OFFER THEIR PROPOSED COMPROMISE

To the extent the court is inclined to ask the Parties to continue discussion of a compromise in this ongoing dispute, Plaintiffs reiterate and re-offer their last proposal to Defendants. Specifically, Plaintiffs are willing to withdraw their objection to the subpoena for documents to QVC's custodian of records and will stipulate to the authenticity of any documents produced by QVC in exchange for Defendants' withdrawal of its deposition subpoenas of all QVC witnesses.

## IV. <u>CONCLUSION</u>

Based on the foregoing, Plaintiffs' respectfully request that Defendants' subpoenas to QVC be quashed in their entireties.

                                        Respectfully submitted.

                                        **GREENSPOON MARDER LLP**

Dated: May 1, 2018         By:     /s/ Gabriel G. Hedrick
                                                Anton N. Handal
                                                Gabriel G. Hedrick
                                                Lauren G. Kane
                                                Attorneys for Plaintiffs
                                                H.I.S.C., INC. and
                                                DEPALMA ENTERPRISES, INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of the foregoing document has been served on this date to all current and/or opposing counsel of record, if any to date, who are deemed to have consented to electronic service via the Court's CM/ECF system. Any other counsel of record will be served by electronic mail, facsimile and/or overnight delivery.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed this 1st day of May, 2018 at San Diego, California.

/s/ Gabriel G. Hedrick
Gabriel G. Hedrick