FILED
OCT 10 2018
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.,<br><br>                                  Plaintiff,<br>v.<br><br>FRANMAR INTERNATIONAL IMPORTERS, LTD. et al.,<br><br>                                Defendants. | Case No.: 3:16-cv-00480-BEN-WVG<br><br>**ORDER:**<br><br>(1) **GRANTING IN PART AND DENYING IN PART PLAINTIFFS' PARTIAL MOTION FOR SUMMARY JUDGMENT;**<br><br>(2) **DENYING PLAINTIFFS'** *DAUBERT* **MOTIONS**<br><br>[Docket Nos. 99, 102, 103] |
| FRANMAR INTERNATIONAL IMPORTERS, LTD.,<br><br>                                Counterclaimant,<br>v.<br><br>H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.,<br><br>                                Counterclaim Defendants. | |

      Plaintiffs H.I.S.C., Inc. and DePalma Enterprises, Inc. move for partial summary judgment and to exclude from consideration the testimony of two experts under *Daubert*. Docket Nos. 99, 102, 103. For the reasons that follow, Plaintiffs' motion for partial

1

summary judgment is **GRANTED IN PART AND DENIED IN PART**. Plaintiffs' *Daubert* motions are **DENIED as moot**.

## I.  BACKGROUND[1]

This case is about an intellectual property dispute between Plaintiffs H.I.S.C., Inc. and DePalma Enterprises, Inc. and Defendants Franmar International Importers, Ltd., Maria Rajanayagam, and Ravi Industries, Ltd. The dispute primarily concerns Defendants' alleged trade dress rights to an outdoor "garden broom."

Maria Rajanayagam owns and operates the Canadian company, Franmar, which sells an outdoor garden broom called "The Original Garden Broom" (the "Original Broom"). Sri Lankan company Ravi Industries manufactures the outdoor brooms sold by Franmar. From approximately February 2012 through July 25, 2012, Plaintiffs purchased the Original Broom from Franmar and Rajanayagam. Under the business name, "Ultimate Innovations," Plaintiffs sold the Original Broom to its customers in the United States, including to its customers at garden shows and QVC. However, on or about July 25, 2012, Defendants advised that they were terminating all sales of the Original Broom to Plaintiffs. In turn, Plaintiffs sold off the remainder of the brooms purchased from Defendants. Plaintiffs then found an alternative source for the garden broom, branded the broom "The Ultimate Garden Broom," and obtained federal trademark protection for the name.

Around August 24, 2015, Defendants' counsel sent a letter to Plaintiffs' customer, QVC, stating that Ravi owned the exclusive patent for the Original Broom and that Franmar was the exclusive distributor of the Original Broom in North America. On September 1, 2015, Defendants' counsel sent a letter to Plaintiffs' counsel demanding

---

[1] The following overview of the facts is drawn from the relevant admissible evidence submitted by the parties. The Court's reference to certain pieces of evidence is not an indication that it is the only pertinent evidence relied on or considered. The Court has reviewed and considered all of the relevant admissible evidence submitted by the parties.

that Plaintiffs "cease and desist any further infringement of Franmar's exclusive rights to its intellectual property, including, without limitation, The Original Garden Broom . . . and all associated patents, copyrights, trademarks, trade dress, good will and marketing/advertising ideas." Docket No. 1-8, p. 1. The parties exchanged additional letters expressing their disagreement about the alleged violations of Franmar's intellectual property. Ultimately, Plaintiffs filed the present lawsuit against Defendants Franmar International Importers, Ltd., Maria Rajanayagam, and Ravi Industries, Ltd., asserting numerous claims for declaratory judgment related to patent, copyright, trademark, and trade dress rights for the outdoor broom, among other claims. Defendant-Counterclaimant Franmar then counterclaimed for trade dress infringement and unfair competition. On April 4, 2018, the Court entered default judgment against Ravi.[2] Docket Nos. 52, 75, and 76.

Plaintiffs move for summary judgment on Counts I, II, III, IV, and V of their Complaint and on Defendant-Counterclaimant Franmar International Importers, Ltd.'s Counterclaims I, II, III, and IV. In their opposition to Plaintiffs' motion, Defendants concede they "do not assert rights to the '664 patent, any copyright, or trademark in the name the 'Original Garden Broom'" and thus, do not oppose Plaintiffs' motion for summary judgment on Counts I-IV. Docket No. 105, p. 5. Thus, summary judgment is **GRANTED** in favor of Plaintiffs on Counts I, II, III, and IV of their Complaint.

Accordingly, the Court turns to the remaining claims at issue in the present motion:

(1) **Plaintiffs' Count V** for Declaratory Judgment that Defendants' trade dress is unenforceable and that Plaintiffs have not infringed and are not infringing upon Defendants' trade dress;
(2) **Franmar's Counterclaim I** for Unfair Competition: Trade Dress Infringement under 15 U.S.C. § 1125(a);
(3) **Franmar's Counterclaim II** for Unfair Competition under 15 U.S.C. § 1125(a);

---

[2] Accordingly, for simplicity, the Court uses "Defendants" throughout to refer only to Defendants Franmar and Rajanayagam.

3

(4) **Franmar's Counterclaim III** for Common Law Unfair Competition; and
(5) **Franmar's Counterclaim IV** for Unfair Competition under California Business and Professions Code §§ 17200, *et seq.*[3]

## II. LEGAL STANDARD

Summary judgment on a claim is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To prevail on summary judgment, the moving party must show the absence of a genuine issue of material fact with respect to an essential element of the non-moving party's claim. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made that showing, the burden then shifts to the party opposing summary judgment to identify "specific facts showing there is a genuine issue for trial." *Id.* The party opposing summary judgment must then present affirmative evidence from which a jury could return a verdict in that party's favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 257 (1986).

## III. DISCUSSION

At its core, the present motion for summary judgment concerns the alleged trade dress of Defendants' Original Garden Broom (the "Original Broom"). "Trade dress involves the total image of a product and may include features such as size, shape, color, color combinations, texture, or graphics." *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 613 (9th Cir. 1989). The parties agree on the components of the alleged trade dress at issue here: the Original Broom's ornate weaving, wide-fan appearance, coconut shell atop the broom bristles, and smooth handle. *See* Defendants' Opposition, p. 7 and Plaintiffs' Reply, p. 5.

---

[3] The Court does not address, and Plaintiffs did not move for summary judgment on their two state law claims: Count VI for Unfair Competition in violation of California Business and Professions Code §§ 17200, *et seq.* and Count VII for Tortious Interference with Prospective Economic Advantage.

4

To succeed on a trade dress infringement claim, the alleged claimant must show: (1) the trade dress is non-functional; (2) the trade dress serves a source-identifying role, either because it is "inherently distinctive" or has acquired "secondary meaning"; and (3) there is a substantial likelihood of consumer confusion between the claimant's and infringer's products. *Disc Golf Ass'n, Inc. v. Champion Discs, Inc.*, 158 F.3d 1002, 1005 (9th Cir. 1998). Where the trade dress at issue concerns the product's design, however, a showing of secondary meaning is required. *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000). Plaintiffs challenge only the second element, requiring proof of either inherent distinctiveness or secondary meaning.

### A. Product Design or Product Packaging

As a threshold matter, the parties dispute whether Defendants must show secondary meaning or may instead, show inherent distinctiveness. The answer to that question turns on whether Defendants' trade dress is product design or more akin to product packaging. Plaintiffs contend the Original Broom's trade dress constitutes product design and thus, requires a showing of secondary meaning. Meanwhile, Defendants argue their trade dress is akin to product packaging, which requires a showing of inherent distinctiveness, not secondary meaning.

As support, Defendants rely primarily on *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763 (1992). That case, however, is inapposite. In *Two Pesos*, the Supreme Court found certain restaurant décor to be inherently distinctive and thus, protectable, without a showing of secondary meaning. Yet, in its later case, *Wal-Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205 (2000), the Supreme Court clarified its *Two Pesos* holding by analogizing the restaurant décor to "product packaging" for the restaurant's food, rather than product design. *Id.* at 215. The Supreme Court acknowledged that distinguishing *Two Pesos* in such a way would "force courts to draw difficult lines between product-design and product-packaging" cases, but decided "that the frequency and the difficulty of having to distinguish between product design and product packaging w[ould] be much less than the frequency and the difficulty of having to decide when a

5

product design is inherently distinctive." *Id.* The Supreme Court then directed, "To the extent there are close cases . . . courts should err on the side of caution and classify ambiguous trade dress as product design, thereby requiring secondary meaning." *Id.*

To be sure, *Wal-Mart* did not offer a bright-line test for distinguishing between product packaging and design, but it did provide several illustrative examples. For instance, the Supreme Court reasoned that "even the most unusual of product designs—such as a cocktail shaker shaped like a penguin—is intended not to identify the source, but to render the product itself more useful and more appealing." *Id.* at 213. The trade dress at issue in *Wal-Mart* also offers guidance. There, the Supreme Court found "a line of spring/summer one-piece seersucker outfits decorated with appliques of hearts, flowers, fruits, and the like" amounted to product design, not packaging. *See also, e.g., In re Slokevage*, 441 F.3d 957, 961-62 (Fed. Cir. 2006) (interpreting *Wal-Mart* and holding that, where the alleged trade dress is incorporated into the product itself, it amounts to product design).

The facts before this Court do not present a "close case[]" between product design and product packaging, and even if they did, the Court heeds *Wal-Mart*'s guidance to err on the side of classifying trade dress as product design. *See id.* Contrary to Defendants' contentions, the trade dress at issue here is not akin to a fancy bottle containing a bath product, *see In re Creative Beauty Innovations, Inc.*, 56 U.S.P.Q.2d (BNA) 1203, 2000 WL 1160455 at *5 (TTAB 2000); a restaurant with distinctive décor, *see Two Pesos*, 505 U.S. 763; or even, a glass Coca-Cola bottle that arguably "constitute[s] packaging for those consumers who drink the Coke and then discard the bottle, but may constitute the product itself for those consumers who are bottle collectors," *see Wal-Mart*, 529 U.S. 205. Instead, Defendants' alleged trade dress – the ornate weaving, the wide-fan appearance, the coconut shell top, and the smooth handle – are part of the broom *product*, itself, not some form of disposable packaging. *Cf. e.g., Globefill Inc. v. Elements Spirits, Inc.*, 2013 WL 12109779, at *2 (C.D. Cal. Oct. 15, 2013) ("Plaintiff's skull-shaped bottle is packaging, and the trade dress is not product design."); *Yankee Candle Co. v.*

*Bridgewater Candle Co., LLC*, 259 F.3d 25, 41 (1st Cir. 2001) ("Detachable labels are a classic case of product packaging, and therefore may be inherently distinctive."); *Moroccanoil, Inc. v. Marc Anthony Cosmetics, Inc.*, 57 F.Supp.3d 1203, 1222 (C.D. Cal. 2014) ("Moroccanoil's trade dress is inherently distinctive because, like a Tide bottle and colors, its function is identification.").

Put another way, the components of the Original Broom's alleged trade dress make the broom product what it is and are "intended not to identify the source, but to render the product itself more useful and more appealing." *Wal-Mart*, 529 U.S. at 213. Thus, Defendants' trade dress features are more analogous to those *Wal-Mart* classified as product design.[4] Accordingly, this is a product design case, which can be proven only through a showing of secondary meaning.[5] *See Wal-Mart*, 529 U.S. at 216 ("In an action for infringement of unregistered trade dress under § 43(a) of the Lanham Act, a product's design is distinctive, and therefore protectable, only upon a showing of secondary meaning.").

**B.  Secondary Meaning**

Plaintiffs challenge whether Defendants' Original Broom's trade dress has acquired secondary meaning. A trade dress develops secondary meaning "when, in the minds of the public, the primary significance of [the trade dress] is to identify the source of the product rather than the product itself." *Wal-Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205, 211 (2000). To show secondary meaning, the trade dress claimant must show "a mental recognition in buyers' and potential buyers' minds that products connected

---

[4] Indeed, Defendants sell the Original Broom packaged in a green wrap-around label, a feature not at issue as part of their trade dress dispute but which appears to be more like "packaging" than the underlying broom product, itself. *See* Docket No. 14, pp. 19-20, 37 (image), 39 (referring to label as packaging).

[5] Because the Court finds the Original Broom's alleged trade dress is product design requiring secondary meaning, the Court need not reach the parties' alternative arguments as to inherent distinctiveness.

with the [trade dress] are associated with the same source." *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 873 (9th Cir. 2002). Whether secondary meaning exists is a question of fact. *Id.* at 1355.

A trade dress claimant may establish secondary meaning through direct and circumstantial evidence. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition* § 15:30 (4th ed. 2000). Direct evidence, such as consumer surveys and direct consumer testimony, often provides the strongest evidence of secondary meaning. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1358 (9th Cir. 1985); *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989).

Plaintiffs argue the Original Broom's trade dress lacks secondary meaning by relying exclusively on Dr. Jacqueline Chorn's expert report, which interprets the results of a consumer survey she conducted. Because the expert report is not admissible, however, the Court cannot consider the report in evaluating the present motion. *See* Fed. R. Civ. P. 56(c)(4) ("An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.").

The expert report fails to comply with Federal Rule of Civil Procedure 56(c)(4) in several material respects: it does not contain Dr. Chorn's signature under penalty of perjury, and it does not contain her attestation that she is competent to testify to the report's conclusions and opinions. Nor is the report accompanied by any separate sworn declaration by Dr. Chorn. Instead, Plaintiffs attach to the report only Plaintiffs' counsel's expert witness disclosure. Expert disclosures signed under penalty of perjury by a party's attorney, however, do not satisfy the "functional concerns" of Federal Rule of Civil Procedure 56(c)(4) – that Dr. Chorn is competent to testify to the conclusions and opinions in the report. *Cf. Am. Federation of Musicians of United States and Canada v. Paramount Pictures Corp.*, 2017 WL 4290742 (9th Cir. Sep. 10, 2018) (finding an unsworn expert report accompanied by the expert's sworn declaration satisfied the functional concerns behind Rule 56(c)(4)).

8

Moreover, the Court has reviewed other courts' decisions on similar facts and remains unconvinced that the unsworn expert report at hand qualifies for an exception or some form of lesser admissibility standard. Of those courts that accepted unsworn expert reports, the expert reports at issue otherwise still met the requirements under Rule 56(c). For example, in *Single Chip Systems Corp. v. Intermec IP Corp.*, 2006 WL 4660129 (S.D. Cal. Nov. 6, 2006), the Court admitted unsworn expert reports where the reports stated in their introductions "that the contents were made on personal knowledge, that the facts would be admissible in evidence, and that the affiants [we]re competent to testify to the information contained herein." *Id.* at *6. Dr. Chorn's report does not so state. *See* Exhibit K.

Further, Plaintiffs do not offer Dr. Chorn's report to show a *dispute* of fact. Rather, as the moving party, they offer the report to show the absence of any dispute of fact and their entitlement to judgment as a matter of law. Because Plaintiffs are the moving party, shouldering the burden on summary judgment, Plaintiffs' evidence is held to a slightly higher standard than that of the non-movant. *See Competitive Technologies, Inc. v. Fujuitsu Ltd.*, 333 F. Supp. 2d 858 (N.D. Cal. 2004) (noting that the non-movant's expert report submitted in opposition to summary judgment is subject to "less exacting standards" than a moving party's affidavit); *see also Shinabarger v. United Aircraft Corp.*, 262 F.Supp. 52, 56 (D. Conn. 1996) ("The existence of such a statement, although not presently in evidentiary form, should alert the summary judgment court to the availability at the trial of the facts contained in the statement."). Accordingly, the Court cannot consider Dr. Chorn's expert report. *See also, Fowle v. C&C Cola, a Div. of ITT-Continental Baking Co.*, 858 F.2d 59, 67 (3d Cir. 1989) (excluding expert report where only plaintiff's attorney, not the expert himself, attested to the veracity of the report); *Provident Life & Accident Ins. Co. v. Goel*, 274 F.3d 984, 1000 (5th Cir. 2001) (excluding unsworn expert report).

Because Plaintiffs have not offered any admissible evidence showing a lack of secondary meaning, the burden cannot shift to Defendants to identify "specific facts

showing there is a genuine issue for trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, the Court need not turn to Defendants' evidence.[6] Plaintiffs' motion for summary judgment on Count V is **DENIED**.

### C. Franmar's Counterclaims

Plaintiffs additionally move for summary judgment on Franmar's Counterclaims I-IV. In support, Plaintiffs argue only that all of Franmar's counterclaims "rest upon its allegations of trade dress infringement," for which Plaintiffs contend judgment as a matter of law is warranted. Plaintiffs' Memorandum in Support, p. 21. Because the Court has denied summary judgment on Defendants' trade dress rights (Count V), Plaintiffs have not shown as a matter of law that they are entitled to summary judgment on Franmar's counterclaims. Accordingly, summary judgment is **DENIED** on Counterclaims I, II, III, and IV.

## IV. CONCLUSION

For the reasons set forth above, Plaintiffs' motion for partial summary judgment is **GRANTED IN PART AND DENIED IN PART**. Specifically, summary judgment is **GRANTED** in favor of Plaintiffs on Counts I, II, III, and IV of their Complaint. Summary judgment is **DENIED** as to Plaintiff's Count V and Defendant-Counterclaimant Franmar International Importers, Ltd.'s Counterclaims I, II, III, and IV. Finally, Plaintiffs' *Daubert* motions are **DENIED as moot**.

**IT IS SO ORDERED.**

DATED: October 10, 2018

HON. ROGER T. BENITEZ
United States District Judge

---

[6] The Court acknowledges that the parties filed numerous evidentiary objections, Docket Nos. 107, 116, 117, 119, 122. Because Plaintiffs have not carried their initial burden to show they are entitled to judgment as a matter of law, the evidentiary objections are **OVERRULED as moot**. Likewise, Defendants' *Daubert* motions, Docket Nos. 102 and 103, are **DENIED as moot** without prejudice.