UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FRANMAR INTERNATIONAL IMPORTERS, LTD. et al.,<br><br>Defendants. | Case No.: 3:16-cv-00480-BEN-WVG<br><br>**ORDER ON MOTIONS IN LIMINE AND MOTIONS TO SEAL**<br>**[Doc. Nos. 140, 141, 142, 143, 144, 145, 146, 147, 148, 149, 150, 151, 152, 153, 154, 155, 156, 157, 171]** |
| FRANMAR INTERNATIONAL IMPORTERS, LTD.,<br><br>Counterclaimant,<br><br>v.<br><br>H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.,<br><br>Counterclaim Defendants. | |

Plaintiffs H.I.S.C., Inc. and DePalma Enterprises, Inc. sell a range of home and garden supplies, including a broom called "The Ultimate Garden Broom." Defendant Franmar International Importers, Ltd. is an importer and distributor of a different but

similar broom called "The Original Garden Broom." Defendant Maria Rajanayagam is President of Franmar.

Plaintiffs allege that, after they began selling the Ultimate Garden Broom, Defendants contacted Plaintiffs' customers and accused the Ultimate Garden Broom of infringing certain intellectual property rights associated with Defendants' Original Garden Broom. Plaintiffs allege that Defendants' communications with its customers damaged their business and seek, among other things, a judgment that the trade dress asserted by Defendants is unenforceable and not infringed. Plaintiffs also assert claims for unfair business practices and tortious interference with prospective economic advantage. Defendants seek damages and assert trade dress and unfair competition counterclaims, alleging that Plaintiffs' Ultimate Garden Broom infringes the trade dress of their Original Garden Broom. On Plaintiffs' motion for partial summary judgment, the Court granted summary judgment in favor of Plaintiffs on Counts I, II, III, and IV of their Complaint and denied summary judgment as to Plaintiff's Count V and Defendant-Counterclaimant Franmar International Importers, Ltd.'s Counterclaims I, II, III, and IV. [*See* Doc. 133.]

In preparation for trial on February 5, 2019, the parties filed 17 motions in limine. [Docs. 140-156.] The parties also filed motions to seal in conjunction with their motions in limine. [Docs. 157, 171.] The Court considers each motion in turn.

I.     LEGAL STANDARD

Rulings on motions in limine fall entirely within this Court's discretion. *United States v. Bensimon*, 172 F.3d 1121, 1127 (9th Cir. 1999) (citing *Luce v. United States*, 469 U.S. 38, 41-42 (1984)). Evidence is excluded on a motion in limine only if the evidence is clearly inadmissible for any purpose. *Fresenius Med. Care Holdings, Inc., v. Baxter Int'l, Inc.*, No. C 03-1431 SBA (EDL), 2006 WL 1646113, at *3 (N.D. Cal. June 12, 2006). If evidence is not clearly inadmissible, evidentiary rulings should be deferred until trial to allow questions of foundation, relevancy, and prejudice to be resolved in context. *See Bensimon*, 172 F.3d at 1127 (when ruling on a motion in limine, a trial court lacks access to all the facts from trial testimony). Denial of a motion in limine does not mean that the

evidence contemplated by the motion will be admitted at trial. *Id.* Instead, denial means that the court cannot, or should not, determine whether the evidence in question should be excluded before trial. *Id.*; *see also McSherry v. City of Long Beach*, 423 F.3d 1015, 1022 (9th Cir. 2005) (rulings on motions in limine are subject to change when trial unfolds).

## II. PLAINTIFFS' MOTIONS IN LIMINE NOS. 1-10 [Docs. 140-149]

### A. Motion No. 1 – Non-Expert Evidence and Witnesses Disclosed after the Close of Fact Discovery [Doc. 140]

On August 2, 2018, two months after the close of fact discovery, Plaintiffs took Maria Rajanayagam's expert witness deposition. At the deposition's conclusion, Defendants produced 20 pages of documents as being related to secondary meaning, an issue on which Ms. Rajanayagam was designated to provide expert testimony. Plaintiffs seek to exclude each of those documents as disclosed after the close of fact discovery. However, of those documents, Defendants seek to offer only the testimony of Customer Jennifer Grist and her late-disclosed 6/4/2018 email chain [F003673-F003678] with Ms. Rajanayagam in which Ms. Grist professes to be confused about who sold the broom she purchased at the Philadelphia Flower Show.

In the email, Ms. Rajanayagam responds that it was a copy of her broom sold by Plaintiffs because Ms. Rajanayagam's brooms were not sold at that particular flower show. Plaintiffs, however, suspect that Ms. Grist purchased the broom at a different flower show occurring close in time to the Philadelphia Flower Show and at which one of *Defendants*' retailers was present. Plaintiffs contend they never had a fair opportunity to test their suspicion through a third party subpoena to Ms. Grist, which might have revealed exculpatory sales receipts and/or deposition testimony. Plaintiffs seek to exclude both the emails and Ms. Grist's testimony. Defendants oppose, contending they could not have produced the documents prior to the close of fact discovery because the documents did not exist at the time. Plaintiffs do not appear to have filed any formal discovery motions to address the late-disclosed evidence, e.g. a motion to compel Ms. Grist's deposition or to reopen discovery.

Under Rule 37(c)(1), the party whose evidence may be excluded has the burden of proving its failure to disclose was substantially justified or is harmless. *R & R Sails, Inc. v. Ins. Co. of Pennsylvania*, 673 F.3d 1240, 1246 (9th Cir. 2012). Nondisclosure is harmless if it does not prejudice the other party. *Id.* In assessing harmlessness, the Court may consider a number of factors, including "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." *Unionamerica Ins. Co., Ltd. v. Fort Miller Grp., Inc*., 2009 WL 275104, at *1 (N.D. Cal. Feb. 4, 2009).

Here, the failure to disclose is harmless. First, Defendants offered justification for not disclosing the discovery prior to the cut-off. Second, Plaintiffs will not be surprised by the evidence because they have had time to develop a defense and can cross-examine Ms. Grist about her attendance at the flower show. Further, Plaintiffs do not appear to have taken any steps in discovery to attempt to address the alleged prejudice of the evidence. Moreover, because the emails evince a customer's confusion about the seller of the broom, the evidence is important to the actual confusion element of secondary meaning. Finally, the evidence is unlikely to disrupt trial because, as provided by Defendants, the testimony will take approximately five minutes.

Accordingly, the motion is **DENIED**. The evidence is relevant because it tends to show customer Jennifer Grist was confused about the broom. Further, it appears Defendants did nothing to depose Ms. Grist. For example, Defendants did not move to compel or move for sanctions, and only now do Defendants ask to preclude the Ms. Grist evidence.

B. **Motion No. 2 – Any Evidence or Testimony that the Asserted Trade Dress Constitutes Packaging and/or is Inherently Distinctive [Doc. 141]**

Plaintiffs seek to exclude this evidence because the Court ruled on summary judgment that the trade dress is product design, not packaging. Defendants do not oppose.

The motion is **GRANTED**. Because the Court ruled on summary judgment that the trade dress is product design, evidence that the trade dress is packaging or is inherently distinctive is not relevant.

### C. Motion No. 3 – Evidence and Testimony Related to the Traditional Kade Broom [Doc. 142]

Plaintiffs contend the Kade Broom evidence cannot be introduced to show inherent distinctiveness because the Court ruled on summary judgment that the alleged trade dress constitutes product design and thus, cannot be inherently distinctive. The parties agree on this point (*see supra* Motion No. 2). Plaintiffs further argue the evidence should be excluded for any other purpose as irrelevant. Defendants respond that showing the traditional Kade Broom to the jury will highlight its functional and non-functional elements, and a visual comparison of the two brooms will go to two factors relevant to the secondary meaning inquiry: (6) copying and (7) confusion. The evidence is also relevant in explaining how Ms. Rajanayagam developed the distinguishing features of her broom. The evidence is relevant, and its probative value likely outweighs any risk of confusion of the issues, unfair prejudice, or misleading the jury. The motion is **DENIED**.

### D. Motion No. 4 – Expert Witness Testimony from Maria Rajanayagam Not Disclosed in Defendants' Expert Witness Disclosures (The QVC Evidence) [Doc. 143]

Plaintiffs seek to exclude Ms. Rajanayagam's expert testimony regarding customer confusion caused by Defendants' alleged exclusion from QVC and certain trade shows, much of which will likely involve customers' out-of-court statements. Plaintiffs argue the evidence should be excluded because Defendants failed to disclose these topics in their expert witness disclosures and instead, disclosed them for the first time in Defendants' pretrial disclosures. Plaintiffs argue they did not have the opportunity to depose Ms. Rajanayagam regarding the alleged bases for those opinions.

Because Plaintiffs had the opportunity to depose Ms. Rajanayagam multiple times, and she testified regarding customer confusion supporting secondary meaning during her deposition, Plaintiffs had an opportunity to address these alleged issues, and the evidence need not be excluded on that ground. The motion is **DENIED**.

### E. Motion No. 5 – Evidence re: Copying in Support of Secondary Meaning [Doc. 144]

Plaintiffs argue that evidence of their intentional copying of Defendants' product is not relevant to secondary meaning in a product design case, relying almost exclusively on *Continental Laboratory Products, Inc. v. Medax Intern. Inc.*, 114 F. Supp. 2d 992 (S.D. Cal. 2000). There, Judge Whelan extensively analyzed the evidentiary relationship between intentional copying and secondary meaning in a trade dress case based entirely on product design and concluded that, in a case where the plaintiff offers *only* evidence of actual copying without any other evidence showing secondary meaning, secondary meaning cannot be inferred.

In other words, Judge Whelan's holding appears limited to cases where the only secondary meaning evidence offered is that of actual copying. In contrast, the Ninth Circuit jury instructions identify eight total factors, including actual copying, that the jury should consider to determine whether a product has acquired secondary meaning. Unlike in *Continental Laboratory*, Defendants here appear likely to proffer secondary meaning evidence based on *additional* factors over and above actual copying, and thus, *Continental Laboratory* does not apply. Because evidence of actual copying accompanied by other secondary meaning evidence is relevant, the motion is **DENIED**.

### F. Motion No. 6 – Evidence re: Extraterritorial Sales, Advertising, and Marketing [Doc. 145]

Plaintiffs argue all evidence of sales, advertising, and marketing activities occurring outside of the U.S. is not relevant because the U.S. is the relevant market. However, the evidence appears relevant to Defendants' counterclaims and the parties' business relationship, leading to the alleged infringement. Specifically, Plaintiffs entered a three

year working relationship with Defendants where their agreement was performed partially in Sri Lanka (source of manufacturing), partially in Canada (Defendants held an exclusive distributorship agreement with Ravi Industries, Ltd., to sell the broom in North America), and partially in the U.S. (through sales at QVC, USA, and domestic trade shows). Further, because the motion seeks to exclude *all* such evidence, it is also overbroad and vague. Because the motion is overbroad and vague, and this evidence appears relevant, the motion is **DENIED**.

### G. Motion No. 7 – Evidence on Whisks and Colorized Brooms [Doc. 146]

Plaintiffs move to exclude evidence of whisk and colorized brooms as not relevant. Defendants respond the marketing and sales of whisk and colorized brooms form a small part of this trade dress and unfair competition case because the brooms are a smaller size of the original broom, and this evidence is part of the "development story" of the broom. Defendants concede, however, that they have not located any cases holding that trade dress can be expanded to include derivative or spin-off products. The whisks and colorized brooms are not part of Defendants' alleged trade dress, and thus, this evidence does not appear relevant and would likely confuse the jury. Because this evidence's minimal probative value is outweighed by risk of jury confusion, the motion is **GRANTED**.

### H. Motion No. 8 – Testimony re: Similar Product Names or Packaging Labels [Doc. 147]

Plaintiffs limit their motion to argument or testimony that alleges the parties' product names ("Ultimate Garden Broom" versus "Original Garden Broom") and/or virtually identical wrap-around packaging labels are similar because Defendants have not asserted trade dress infringement related to Plaintiffs' product name and/or the wrap-around label. Defendants respond that the labels are relevant to show their broom acquired secondary meaning based on actual copying of the label. Defendants argue the similar names and labels are relevant to demonstrate their unfair competition claim – false designation for "passing off" where one's own creation is sold under the name or mark of another. Thus, the evidence should be admitted for that purpose, only. Accordingly, because Defendants'

7

product name or wrap-around label are not relevant to their trade dress claim, the evidence is not admissible for the trade dress claim, and the motion is **GRANTED** as limited.

## I. Motion No. 9 – Evidence Not Disclosed in Pretrial Disclosures or the Pretrial Order [Doc. 148]

Plaintiffs seek a blanket exclusion of all such evidence and testimony to avoid unfair surprise at trial, acknowledging that the evidence may come in for impeachment. Defendants correctly respond the motion is vague and overbroad. Thus, because the motion is overbroad and vague and requests a blanket exclusion, the motion is **DENIED**.

## J. Motion No. 10 – Hearsay Evidence or Reference to Potential Hearsay Evidence in Opening Statement [Doc. 149]

Plaintiffs seek to exclude all hearsay at trial, citing to numerous exhibits identified by Defendants, which Plaintiffs contend will likely constitute inadmissible hearsay "depending on how Defendants use them at trial." Because whether evidence is hearsay often depends on the context in which it is offered, the Court will delay ruling on such hearsay objections until trial, and the motion is **DENIED**.

## III. DEFENDANTS' MOTIONS IN LIMINE NOS. 1-7 [Docs. 150-156]

### A. Motion No. 1 – Plaintiffs' Exhibit Nos. 4-12, 24, and 28 [Doc. 150]

Defendants move to exclude exhibits containing certain pleadings and letters from one public and several private attorneys as not authenticated, not relevant, comprising attorney argument, lack of foundation, and hearsay. Defendants also argue that the Complaint and Answer are not admissible because they are unsworn. Many of these determinations cannot be made until trial and will depend upon, among other considerations, the foundation laid for the exhibits and the purpose for which they are being offered. Because whether many of these exhibits are admissible cannot be determined until trial, the motion is **DENIED**.

B. **Motion No. 2 – Plaintiffs' Exhibit Nos. 43 and 44 [Doc. 151]**

Defendants seek to exclude Dr. Chorn's expert report and rebuttal expert report as inadmissible hearsay because they include approximately 400 respondents' out-of-court statements going to secondary meaning. Plaintiffs respond that they do not intend to introduce the reports for the truth of the matters asserted, except for purposes of refreshing Dr. Chorn's recollection. However, Plaintiffs do intend to introduce the appendices to Dr. Chorn's report, which include a list of documents she reviewed in preparing her report, screenshots of her survey questionnaire, statistics related to participants' responses to the subject survey, the raw data obtained, and a data glossary. Because an expert witness can testify as to the contents of her report to the extent she relies on it in forming her ultimate opinion, portions of the report are admissible. *See, e.g., Paddack v. Dave Christensen, Inc.*, 745 F.2d 1254, 1261-62 (9th Cir. 1984) ("Rule 703 . . . permits . . . hearsay, or other inadmissible evidence, upon which an expert properly relies, to be admitted to explain the basis of the expert's opinion."). Thus, because portions of Dr. Chorn's reports may be admissible under Fed. R. Evid. 703, the motion is **DENIED**.

C. **Motion No. 3 – Plaintiffs' Exhibit No. 14 [Doc. 152]**

Defendants move to exclude Exhibit 14, which is a January 13, 2015 letter in which a non-party (Home Hardware Stores Limited) requests Defendant Ms. Rajanayagam's "written assurances that HHSL is cleared entirely from any allegations of wrong doing, that Franmar undertakes not to complain or initiate and that HHSL remains entirely free to source ekel brooms from any company it chooses." Defendants contend the letter is inadmissible under FRE 408 as a "settlement agreement," is not relevant, and is likely to confuse the jury. Plaintiffs respond that the letter is not a settlement agreement and is instead a business discussion with a non-party because it refers to an "assurance" required by Home Hardware as part of its "decision to begin purchasing ekel brooms again from Ravi through Franmar." These business discussion communications are admissible because the discussions "had not crystallized to the point of threatened litigation, a clear

9

cut-off point." *Big O Tires Dealers, Inc. v. Goodyear Tire & Rubber Co.*, 561 F.2d 1365, 1368 (10th Cir. 1977) (sustaining district court's admission of evidence because communications were "simply business communications").

The letter appears relevant to Plaintiffs' state law claims to show "Defendants were and are engaged in a business practice of knowingly making false representations to Plaintiffs and Plaintiffs' retailers, business partners, trade shows, customers and/or potential customers that Plaintiffs are selling 'knock off' brooms that infringe on Defendants' alleged intellectual property rights." Plaintiffs also allege "Defendants' falsely asserted [IP] rights that were invalid and unenforceable on their face and did so knowingly, recklessly, and/or negligently in order to usurp Plaintiffs' business for itself." Because the letter reflects business communications and is relevant to Plaintiffs' state law claims, the motion is **DENIED**.

### D. Motion No. 4 – Reference to Granted Summary Judgment Issues of Patent, Copyright, and Trademark [Doc. 153]

On summary judgment, Plaintiffs partially prevailed on four unopposed counts: "Defendants concede they do not assert rights to the '664 patent, any copyright, or trademark in the name the 'Original Garden Broom' and thus, do not oppose Plaintiffs' motion for summary judgment on Counts 1-4." Defendants now move to exclude *all* references to patent, trademark, and copyright infringement as irrelevant because the lawsuit is proceeding only on the trade dress, unfair competition, and interference with prospective economic advantage claims. Plaintiffs respond that such evidence is relevant because Plaintiffs' state law claims of unfair competition and interference rest on Defendants' allegations of trade dress infringement, as well as patent, trademark, and copyright infringement. Because Plaintiffs' patent, copyright, and trademark claims are relevant to the state law claims, the evidence is relevant, and the motion is **DENIED**.

E. **Motion No. 5 – Plaintiffs' Reserve Exhibits Nos. 93-98, 158, 168, 172, 173 [Doc. 154]**

Defendants contend the pleadings, emails from several private attorneys, and purported actions of the United States Patent Trademark Office on a registered trademark are not admissible as unauthenticated, not relevant, comprising attorney argument, lacking foundation, and hearsay. Again, these determinations cannot be made until trial and will depend upon, among other factors, the foundation laid for the exhibits and the purpose for which they are being offered. Because whether many of these exhibits are admissible cannot be determined until trial, the motion is **DENIED**.

F. **Motion No. 6 – Plaintiffs' Certain Deposition Testimony of Unavailable Witnesses [Doc. 155]**

In essence, Defendants object to three categories of deposition designations. First, Defendants seek to exclude portions of Plaintiffs' deposition testimony designations because they contain Plaintiffs' counsel's objections. However, these objections are not evidence; they are objections to Defendants' proffered evidence, and thus, inclusion of the objections is necessary to preserve them for trial.

As to Sam Ahilan's testimony, Defendants object certain designations are "incomplete." As to several designations, Plaintiffs concede the designations are incomplete because they end with questions or mid-sentence, which Plaintiffs contend are "typos." Thus, Plaintiffs request permission to amend these designations in the proposed pretrial order. Plaintiffs do not object to Defendants providing responsive designations as to the corrected designations.

Finally, Defendants also move to exclude the designation of third party QVC, Inc.'s employee Jenne Frackelton at 69:19-24, arguing it is speculation without foundation. However, Defendants posed the designated testimony question, and neither party objected. Thus, Defendants cannot now object to the answer to a question they, themselves, posed to the witness.

Because the objected to designations are appropriately designated and not inadmissible on a motion in limine, the motion is **DENIED**. Further, as to the specific Sam Ahilan designations, Plaintiffs may amend as specified in their brief with Defendants having an opportunity to counter-designate.

### G. <u>Motion No. 7 – Evidence of Damages [Doc. 156]</u>

Defendants move to exclude Plaintiffs from presenting "new" evidence on damages at trial, based on their alleged failure to present meaningful testimony on damages at the Rule 30(b)(6) deposition and the parties' stipulation that Plaintiffs "will not produce any fact evidence of its revenues and expenses that has not already been produced by any party in discovery." Plaintiffs did not provide any documents showing loss of revenues under their state law claims, and they declined to designate any expert on damages. Plaintiffs should be bound by their stipulation. Because Plaintiffs specifically stipulated in discovery to not provide "any fact evidence of its revenues and expenses not already produced," the motion is **GRANTED**.

## IV. MOTIONS TO SEAL [Docs. 157, 171]

The parties filed separate motions to seal various documents related to their motions in limine. Defendants move to seal Exhibits 93-96 in support of their Motion in Limine No. 5. [Doc. 157.] As support, Defendants contend the exhibits were supplied by Plaintiffs and marked as "confidential." The Court has inspected these exhibits, which contain business communications emails between various legal counsel and businesses, searches on the public Trademark Electronic Search System website, and a mockup of a broom. None of these exhibits appear to contain information requiring sealing.

Likewise, Plaintiffs move to seal their opposition to Defendants' Motion in Limine No. 3 to exclude Exhibit 14, which contains the business communications alleged to be a settlement, as well as two accompanying exhibits. [Doc. 171.] As support, Plaintiffs contend the exhibits contain portions of Ms. Rajanayagam's deposition and an exhibit referenced in that deposition, both of which Defendants asserted contain confidential business information and marked as "confidential." Again, a party's designation of records

as "confidential" and their inclusion of business communications do not justify precluding the public from viewing those documents.

Although the Court recognizes there are times when documents should be protected from public disclosure, the explanations provided are insufficient to justify filing each of these documents under seal. Accordingly, the parties' motions to seal, Docs. 157 and 171, are **DENIED WITHOUT PREJUDICE**. However, the Court grants the parties leave to file renewed motions to file under seal, so long as those motions provide greater justification specific to *each* document for which sealing is sought. For any documents the parties seek to file under seal, they should either (1) file redacted versions with an explanation of why the redacted portions should be redacted from public view, or (2) they should provide a detailed explanation of why the entire document should be filed under seal. As to either option, the parties should offer authority in support.

V. **CONCLUSION**

In summary, the Court rules as follows:

1. The Court **DENIES** Plaintiffs' Motion in Limine # 1 – Non-Expert Evidence and Witnesses Disclosed after the Close of Fact Discovery [Doc. 140].

2. The Court **GRANTS** Plaintiffs' Motion in Limine #2 – Any Evidence or Testimony that the Asserted Trade Dress Constitutes Packaging and/or is Inherently Distinctive [Doc. 141].

3. The Court **DENIES** Plaintiffs' Motion in Limine #3 – Evidence and Testimony Related to the Traditional Kade Broom [Doc. 142].

4. The Court **DENIES** Plaintiffs' Motion in Limine #4 – Expert Witness Testimony from Maria Rajanayagam Not Disclosed in Defendants' Expert Witness Disclosures (The QVC Evidence) [Doc. 143].

5. The Court **DENIES** Plaintiffs' Motion in Limine #5 – Evidence re: Copying in Support of Secondary Meaning [Doc. 144].

6. The Court **DENIES** Plaintiffs' Motion in Limine # 6 – Evidence re: Extraterritorial Sales, Advertising, and Marketing [Doc. 145].

7. The Court **GRANTS** Plaintiffs' Motion in Limine # 7 – Evidence on Whisks and Colorized Brooms [Doc. 146].

8. The Court **GRANTS** as limited Plaintiffs' Motion in Limine # 8 – Testimony re: Similar Product Names or Packaging Labels [Doc. 147].

9. The Court **DENIES** Plaintiffs' Motion in Limine #9 – Evidence Not Disclosed in Pretrial Disclosures or the Pretrial Order [Doc. 148].

10. The Court **DENIES** Plaintiffs' Motion in Limine #10 – Hearsay Evidence or Reference to Potential Hearsay Evidence in Opening Statement [Doc. 149].

11. The Court **DENIES** Defendants' Motion in Limine #1 – Plaintiffs' Exhibit Nos. 4-12, 24, and 28 [Doc. 150].

12. The Court **DENIES** Defendants' Motion in Limine #2 – Plaintiffs' Exhibit Nos. 43 and 44 [Doc. 151].

13. The Court **DENIES** Defendants' Motion in Limine #3 – Plaintiffs' Exhibit No. 14 [Doc. 152].

14. The Court **DENIES** Defendants' Motion in Limine #4 – Reference to Granted Summary Judgment Issues of Patent, Copyright, and Trademark [Doc.153].

15. The Court **DENIES** Defendants' Motion in Limine #5 – Plaintiffs' Reserve Exhibits Nos. 93-98, 158, 168, 172, 173 [Doc. 154].

16. The Court **DENIES** Defendants' Motion in Limine #6 – Plaintiffs' Certain Deposition Testimony of Unavailable Witnesses [Doc. 155].

17. The Court **GRANTS** Defendants' Motion in Limine #7 – Evidence of Damages [Doc. 156].

18. The Court **DENIES** the parties' motions to seal [Docs. 157, 171.]

In addition, the parties are ordered to submit a joint set of proposed jury instructions to the Court on or before **January 15, 2019**. To the extent jury instructions are disputed, the parties may submit separate jury instructions <u>only</u> as to the disputed instructions. To aid the Court, the parties should also submit a joint index, which reflects the numbers and

titles of their proposed jury instructions and identifies the particular instructions with which they do not agree.

**IT IS SO ORDERED.**

DATED: December 19, 2018

_____
Hon. Roger T. Benitez
United States District Court