
FILED
APR 0 8 2019
CLERK US DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY _____ DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.I.S.C., INC. and DEPALMA ENTERPRISES, INC., <br><br> Plaintiff, <br><br> v. <br><br> FRANMAR INTERNATIONAL IMPORTERS, LTD. et al., <br><br> Defendants. | Case No.: 3:16-cv-00480-BEN-WVG <br><br> **ORDER DENYING PLAINTIFFS' RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, FOR A NEW TRIAL** <br> **[Doc. 223]** |
| FRANMAR INTERNATIONAL IMPORTERS, LTD., <br><br> Counterclaimant, <br><br> v. <br><br> H.I.S.C., INC. and DEPALMA ENTERPRISES, INC., <br><br> Counterclaim Defendants. | |

Pending before the Court is Plaintiffs' renewed motion for judgment as a matter of law or, in the alternative, a new trial. [Doc. 223.] The motion is **DENIED**.

# I. BACKGROUND

This case concerns a trade dress dispute about an outdoor garden broom. Defendant Maria Rajanayagam owns and operates the Canadian company, Defendant Franmar International Importers, Ltd., which sells an outdoor garden broom called "The Original Garden Broom" (the "Original Broom"). Franmar imports the Original Broom from a Sri Lankan manufacturing company, Defendant Ravi Industries, Ltd.[1] From approximately February 2012 through July 20, 2015, Plaintiffs HISC, Inc. and DePalma Enterprises, Inc. purchased the Original Broom wholesale from Franmar. During that same time, Plaintiffs marketed and sold the Original Broom to its customers through their website, flower and garden shows, and QVC. Franmar and Plaintiffs' business relationship ended, and in November 2015, Plaintiffs began marketing and selling another garden broom called "The Ultimate Garden Broom" (the "Ultimate Broom"). Plaintiffs began selling the Ultimate Broom to their customers through their website, flower and garden shows, brick and mortar stores, and QVC.

Plaintiffs filed suit against Defendants for, among other claims, declaratory relief as to Franmar's asserted trade dress rights to the outdoor broom. Franmar then counterclaimed for trade dress infringement and unfair competition.

The case was tried to a jury from February 5, 2019 through February 11, 2019. On February 11, 2019, after the close of evidence and before presentation of closing arguments, Plaintiffs orally moved for judgment as a matter of law under Federal Rule of Civil Procedure 50(a). They argued Defendants had failed to present sufficient evidence to support a finding that (1) the Original Garden Broom had acquired secondary meaning, (2) Franmar owned the claimed trade dress, and (3) the claimed trade dress components

---

[1] On April 4, 2018, the Court entered default judgment against Ravi. Accordingly, for simplicity, the Court uses "Defendants" throughout to refer only to Defendants Franmar and Rajanayagam.

were non-functional. The Court did not permit argument on the motion but took it under submission.

The jury deliberated for over seven hours before reaching its verdict on February 12, 2019. [Doc. 210.] The jury returned a special verdict, finding in favor of Franmar on its counterclaims for trade dress infringement and common law unfair competition, and in favor of Plaintiffs on Franmar's counterclaims for unfair competition under the Lanham Act and California Business & Professions Code § 17200. On February 22, 2019, the Court denied Plaintiffs' Rule 50(a) motion and entered judgment. [Docs. 212, 213.] Plaintiffs then filed a renewed motion for judgment as a matter of law or, in the alternative, for a new trial. [Doc. 223.] For the reasons discussed below, Plaintiffs' motion is **DENIED**.

## II. LEGAL STANDARDS

### A. Judgment as a Matter of Law

Under Rule 50(b), a district court may grant judgment as a matter of law "when the evidence permits only one reasonable conclusion and the conclusion is contrary to that reached by the jury." *Ostad v. Oregon Health Sciences Univ.*, 327 F.3d 876, 881 (9th Cir. 2003). A party seeking judgment as a matter of law must show the verdict is not supported by "substantial evidence," meaning "relevant evidence that a reasonable mind would accept as adequate to support a conclusion." *Callicrate v. Wadsworth Mfg.*, 427 F.3d 1361, 1366 (Fed. Cir. 2005) (citing *Gillette v. Delmore*, 979 F.2d 1342, 1346 (9th Cir. 1992)). When evaluating a motion for judgment as a matter of law, the court does not make credibility determinations or weigh the evidence. *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150-51 (2000). Instead, the court "must draw all reasonable inferences in favor of the nonmoving party." *Id.* at 150.

The court will grant a Rule 50 motion and overturn the jury's verdict only if "there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002). In other words, the "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion."

3

*Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). In addition, "[b]ecause a Rule 50(b) motion is a renewed motion, [it] is limited to the grounds asserted in the pre-deliberation Rule 50(a) motion." *EEOC v. Go Daddy Software, Inc.*, 581 F.3d 951, 961 (9th Cir. 2009).

**B. New Trial**

Under Rule 59, a new trial may be granted "only if the verdict is contrary to the clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a miscarriage of justice." *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 510 n.15 (9th Cir. 2000). A new trial may not be granted "merely because [the court] might have come to a different result from that reached by the jury." *Roy v. Volkswagen of Am., Inc.*, 896 F.2d 1175, 1176 (9th Cir. 1990).

## III. DISCUSSION

Plaintiffs move for judgment as a matter of law on Franmar's counterclaims for trade dress infringement and common law unfair competition. Specifically, Plaintiffs argue the jury's verdict is not supported by substantial evidence showing (1) Franmar's claimed trade dress acquired secondary meaning or (2) Franmar owned the trade dress. In the alternative, Plaintiffs move for a new trial on the trade dress infringement and common law unfair competition counterclaims, arguing that the verdict is against the weight of the evidence and the trial was not fair to Plaintiffs.

**A. The Jury's Finding of Secondary Meaning Is Supported by Substantial Evidence and Is Not Contrary to the Clear Weight of the Evidence**

As a product design case, Franmar's trade dress infringement claim required Franmar to show the Original Broom's design attained secondary meaning. *Wal–Mart Stores, Inc. v. Samara Bros.*, 529 U.S. 205 (2000). To show secondary meaning, a plaintiff must demonstrate "a mental recognition in buyers' and potential buyers' minds that products connected with the [trade dress] are associated with the same source." *Japan Telecom v. Japan Telecom Am.*, 287 F.3d 866, 873 (9th Cir. 2002) (internal quotation omitted). As provided by Ninth Circuit Model Civil Jury Instruction 15.11 on secondary

meaning, the Court instructed the jury to make its secondary meaning determination by considering the following factors:

> (1) Consumer Perception. Whether the people who purchase the product that bears the claimed trade dress associate the trade dress with the owner;
>
> (2) Advertisement. To what degree and in what manner the owner may have advertised the claimed trade dress;
>
> (3) Demonstrated Utility. Whether the owner successfully used this trade dress to increase the sales of its product;
>
> (4) Extent of Use. The length of time and manner in which the owner used the claimed trade dress;
>
> (5) Exclusivity. Whether the owner's use of the claimed trade dress was exclusive;
>
> (6) Copying. Whether HISC/DePalma intentionally copied Franmar's trade dress;
>
> (7) Actual Confusion. Whether HISC/DePalma's use of Franmar's trade dress has led to actual confusion among a significant number of consumers.

[Doc. 207.] The Court instructed the jury that, to determine whether the trade dress was valid and protectable, Franmar had the burden of proving its claimed trade dress acquired secondary meaning. [*Id.*] In its special verdict form, the jury expressly found that (1) Franmar owned the claimed trade dress and (2) the trade dress had "acquired distinctiveness through secondary meaning." [Doc. 210 at p. 9 (Verdict Form).] For the following reasons, the Court concludes that the jury's findings of secondary meaning and ownership are supported by "substantial evidence" and not "contrary to the clear weight of the evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007).

First, Franmar presented two third-party internet articles (published before August 2015) discussing the Original Broom's trade dress components, suggesting that its trade dress is recognizable and identifies the source of the products embodying it. [Doc. 224-4 *Vancouver Sun* "In the Garden," published 10/1/10 ("The brush part of the broom is made from the hard midribs of the dried leaves of the coconut tree. The binding used to fix the

5

3:16-cv-00480-BEN-WVG

meaning, the Court instructed the jury to make its secondary meaning determination by considering the following factors:

> (1) Consumer Perception. Whether the people who purchase the product that bears the claimed trade dress associate the trade dress with the owner;
>
> (2) Advertisement. To what degree and in what manner the owner may have advertised the claimed trade dress;
>
> (3) Demonstrated Utility. Whether the owner successfully used this trade dress to increase the sales of its product;
>
> (4) Extent of Use. The length of time and manner in which the owner used the claimed trade dress;
>
> (5) Exclusivity. Whether the owner's use of the claimed trade dress was exclusive;
>
> (6) Copying. Whether HISC/DePalma intentionally copied Franmar's trade dress;
>
> (7) Actual Confusion. Whether HISC/DePalma's use of Franmar's trade dress has led to actual confusion among a significant number of consumers.

[Doc. 207.] The Court instructed the jury that, to determine whether the trade dress was valid and protectable, Franmar had the burden of proving its claimed trade dress acquired secondary meaning. [*Id.*] In its special verdict form, the jury expressly found that (1) Franmar owned the claimed trade dress and (2) the trade dress had "acquired distinctiveness through secondary meaning." [Doc. 210 at p. 9 (Verdict Form).] For the following reasons, the Court concludes that the jury's findings of secondary meaning and ownership are supported by "substantial evidence" and not "contrary to the clear weight of the evidence." *Wallace v. City of San Diego*, 479 F.3d 616, 624 (9th Cir. 2007).

First, Franmar presented two third-party internet articles (published before August 2015) discussing the Original Broom's trade dress components, suggesting that its trade dress is recognizable and identifies the source of the products embodying it. [Doc. 224-4 *Vancouver Sun* "In the Garden," published 10/1/10 ("The brush part of the broom is made from the hard midribs of the dried leaves of the coconut tree. The binding used to fix the

brush to the broom-handle is made from recycled coconut husk and shell. The handle is made from recycled rubber tree wood."); *The Gardner's Eden* Online Journal "Pretty & Practical: The Garden Broom," published 6/16/11 ("made from all natural recycled materials (fallen coconut palm leaf, coconut husk and untreated rubber handle)" "in spite of its good looks, this tough broom sweeps . . ." "And it's so pretty, why bother putting it away? I've been leaving it propped up against the door where I can admire it" "I think the hand detailing—part of what makes the brush so strong—is also just gorgeous").] Each of these articles was published prior to Plaintiffs' sale of the Ultimate Broom.

As to the amount and manner of advertising, Franmar offered evidence about its advertising efforts and expenditures. Franmar introduced evidence that, from 2010 to 2018, it spent approximately $100,000 on advertising the Original Broom in the United States. [Doc. 223 at p. 15.] In addition, Franmar offered evidence that it gave out free brooms to get them in the hands of consumers and to spread interest in the product. Rajanayagam testified that her marketing efforts depended upon people being able to "see" the broom. Specifically, she testified that she purchased placed print advertisements, gifted the Original Broom to celebrities at the Emmy's and Oscar Awards ceremonies, and gifted the broom to influencers.

Trial testimony showed these promotion efforts paid off, resulting in annual retail sales in the tens of thousands of dollars. *See Clamp Mfg. Co., Inc. v. Enco Mfg. Co., Inc.* 870 F.2d 512, 517 (9th Cir. 1989) ("Evidence of use and advertising over a substantial period of time is enough to establish secondary meaning."). Rajanayagam testified about the number of brooms she sold in the United States in the four years *before* Plaintiffs began selling the Ultimate Broom. [Doc. 223-5.] Over and above the numerous Original Brooms Rajanayagam sold to Plaintiffs, Rajanayagam sold the Original Broom in the United States in the following yearly amounts:

  From June 2011 to May 2012: 1,531 brooms
  From June 2012 to May 2013: 7,753 brooms
  From June 2013 to May 2014: 2,416 brooms
  From May 2014 to May 2015: 7,432 brooms

Even after Rajanayagam terminated the sales relationship with Plaintiffs, she sold 9,512 brooms from June 2015 to May 2016. [Doc. 223-5 at p. 6.]

Moreover, the jury could have reasonably concluded that Plaintiffs intentionally copied Franmar's trade dress. *Vision Sports, Inc. v. Melville Corp.*, 888 F.2d 609, 615 (9th Cir. 1989) ("[P]roof of copying strongly supports an inference of secondary meaning."). Franmar introduced evidence showing that Plaintiffs used its trade dress in an attempt "to seamlessly sell their product without consumers knowing of the change of source." [Doc. 224 at p. 20.] For example, the jury could have reasonably concluded from the evidence at trial that Plaintiffs made virtually no effort to distinguish their Ultimate Broom from Franmar's Original Broom, aside from adding a small hanging loop to the handle. The evidence showed the two brooms were virtually indistinguishable and included the same trade dress elements: the ornate weave of the twine, coconut shell mounted on top of the ekel, wide fan shape of the ekel, and smooth broom handle. *See Paramount Farms Intern. LLC v. Keenan Farms, Inc.*, 2012 WL 5974169, at *8 (C.D. Cal. Nov. 28, 2012) ("The clear similarity in the overall visual impression between Defendant's [product] and Plaintiff's [product] supports an inference of deliberate copying."). Indeed, Plaintiffs even used photographs of the Original Broom on their Ultimate Broom's wrap-around label.

Franmar also introduced evidence, including physical evidence, of several other broom alternatives in the market, suggesting that Plaintiffs had other feasible design choices when making their garden broom. *See id.* (finding inference was "strengthened" because "it c[ould] not be said that defendant had no choice but to mimic Plaintiff's trade dress because other alternatives were unavailable. Given that Defendant had many options to choose from, the fact that it selected a trade dress so similar to Plaintiff's lends weight to the inference that it deliberately copied the Claimed Trade Dress.").

Plaintiffs argue that evidence at trial suggested other possible motives for their decision to copy the Original Broom, including their desire to avoid the costs of developing a new broom design. Plaintiffs are correct. However, the fact that the jury *could have*

reasonably found against Defendants on the copying factor is not the standard on a motion for judgment as a matter of law or for a new trial. Rather, the "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). Here, then, drawing all reasonable inferences in favor of Defendants, the jury could have reasonably concluded Plaintiffs intentionally copied Defendants' trade dress to confuse consumers about the product's source, rather than merely to save money on designing a new broom.

Considering the evidence presented at trial, the Court concludes the jury's finding of secondary meaning is supported by "substantial evidence" and is not "contrary to the clear weight of the evidence." Thus, the Court need not address Plaintiffs' additional arguments attacking the remaining secondary meaning factors. As provided in Jury Instruction No. 13, "[t]he presence or absence of any particular factor should not necessarily resolve whether the Original Garden Broom's claimed trade dress has acquired secondary meaning." [Doc. 207 at p. 16.] Here, a reasonable jury could find, as the jury found in this case, that the Original Broom's trade dress had acquired distinctiveness through secondary meaning. For the same reasons, the Court is not persuaded that the jury's findings were made in error. *See Landes Constr. Co., Inc. v. Royal Bank of Canada*, 833 F.2d 1365, 1372 (9th Cir. 1987) ("Doubts about the correctness of the verdict are not sufficient grounds for a new trial: the trial court must have a firm conviction that the jury has made a mistake.").

**B. Plaintiffs Waived their Challenge to the Lack of an Ownership Instruction**

Plaintiffs additionally argue the jury instructions were erroneous because they did not instruct on trade dress ownership.[2] On a motion for judgment as a matter of law or for

---

[2] Despite Plaintiffs' attempt to characterize their argument as one about the weight of the evidence, their argument is, at face value, a challenge to the jury instructions and is

8

a new trial, "[c]hallenges to jury instructions may be waived." *Crowley v. Epicept Corp.*, 883 F.3d 739, 747-48 (9th Cir. 2018). "A party forfeits a right when it fails to make a timely assertion of that right and waives a right when it is intentionally relinquished or abandoned." *Id.* (quoting *United States v. Kaplan*, 836 F.3d 1199, 1216 (9th Cir. 2016)). "Waiver of a jury instruction occurs when a party considers 'the controlling law, or omitted element, and, in spite of being aware of the applicable law, proposed or accepted a flawed instruction.'" *Id.* (quoting *United States v. Perez*, 116 F.3d 840, 845 (9th Cir. 1997) (en banc)). The distinction between waiver and forfeiture is an important one because "[f]orfeited rights are reviewable for plain error, while waived rights are not." *Id.*

First, Plaintiffs concede that Jury Instruction Numbers 13 and 15 touch on trade dress ownership, including by identifying trade dress ownership as one of the four requisite trade dress infringement elements. [Doc. 223-1 at p. 11.] Second, Plaintiffs waived their challenge to the lack of an additional ownership instruction by expressly and consistently objecting to the inclusion of the *only* other ownership instruction proposed. Indeed, it was Defendants who proposed a trade dress ownership instruction (Ninth Circuit Model Civil Jury Instruction 15.13). Plaintiffs vehemently opposed that instruction both on paper and at oral argument, contending that it "appear[ed] to be directed primarily, if not entirely, at a claim for trademark infringement" and was a "trademark instruction." [Docs. 224-2, 224-3.]

Thus, in sum, Plaintiffs never raised the need for an additional ownership instruction. Nor did Plaintiffs propose an ownership instruction of their own. Rather, they objected to the only ownership instruction proposed by either party, and the Court ruled in Plaintiffs' favor by withholding the instruction. Accordingly, Plaintiffs intentionally abandoned any argument that the jury was not adequately instructed regarding trade dress ownership or that, as a result, the evidence could not support the jury's verdict. *See Crowley*, 884 F.3d

---

reviewed accordingly. *See, e.g., Crowley v. Epicept Corp.*, 883 F.3d 739, 747-748 (9th Cir. 2018) (reviewing challenges to jury instructions in conjunction with waiver doctrine).

at 748 (finding doctors in patent case waived their argument about the jury instructions not adequately instructing the jury about infringement because they explicitly agreed to use a particular instruction and agreed the instruction should omit the law regarding patent infringement).[3]

**C. The Trial Was Fair to Plaintiffs**

Finally, Plaintiffs contend a new trial is warranted because in closing argument, defense counsel made "numerous misrepresentations of the law and the evidence that no doubt influenced the jury's verdict." [Doc. 223-1 at p. 27.] Specifically, Plaintiffs argue that Defendants misrepresented each of the secondary meaning factors in their closing arguments, including actual confusion, copying, consumer perception, advertising, demonstrated utility, and extent and exclusivity of use. Plaintiffs further contend that many of these alleged errors would have been corrected, had the Court given several of the supplemental jury instructions they proposed.

When evaluating a party's misstatements of law during closing argument, the Court is cognizant that "[t]he question is whether counsel's conduct so permeated the trial as to lead to the conclusion the jury was necessarily influenced by passion and prejudice in reaching its verdict." *Cooper v. Firestone Tire & Rubber Co.*, 945 F.2d 1103, 1107 (9th Cir. 1991). Here, the Court is not persuaded that defense counsel's misstatements in closing argument influenced the jury to that degree. *See id.* ("The trial court, which is 'in a far better position to gauge the prejudicial effect of improper comments than an appellate court which reviews only the cold record,' found it was not.") (quoting *Kehr v. Smith Barney, Harris Upham & Co., Inc.*, 736 F.3d 1283, 1286 (9th Cir. 1984)). First, as in two Ninth Circuit cases affirming the district courts' denials of motions for new trials, "the alleged misconduct occurred only in the *argument phase* of the trial." *Id.* (emphasis

---

[3] Even if the Court were to consider Plaintiffs' ownership argument, it is persuaded that, in light of all the evidence at trial, a reasonable jury could find Franmar's trade dress acquired secondary meaning before the first sale of Plaintiffs' infringing Ultimate Broom.

10

3:16-cv-00480-BEN-WVG

added); *see also Kehr*, 736 F.2d at 1286. Therefore, "the remarks were isolated rather than persistent." *Id.* Defense counsel's alleged misstatements were made only during closing arguments. Further, Plaintiffs had their own opportunity to argue their position to the jury during closing arguments.

Additionally, Plaintiffs did not object to defense counsel's allegedly prejudicial misstatements. *U.S. v. Rivera*, 43 F.3d 1291, 1295 (9th Cir. 1995) ("Failure to make a timely objection constitutes a waiver of that objection."). Nor did Plaintiffs move for a mistrial at the end of defense counsel's closing argument. *See Cooper*, 945 F.2d at 1107 (affirming district court's denial of motion for new trial based on closing argument, and reasoning that, "as in *Kehr*, most of counsel's comments were not objected to at trial and appellants did not move for a mistrial at the end of the argument"). Regardless, to the extent any error existed, the error was harmless. The Court instructed the jury on the factors relevant to the secondary meaning inquiry, including by using the definitions for each factor recommended by Ninth Circuit Model Civil Jury Instruction 15.11.

Plaintiffs further contend the Court erred by refusing to give more voluminous instructions proposed by Plaintiffs on several of the secondary meaning factors. The Court disagrees. "A district court has substantial latitude in tailoring jury instructions," so long as they "fairly and adequately covered the issues presented, correctly stated the law, and were not misleading." *Kendall-Jackson Winery, Ltd. v. E. & J. Gallo Winery*, 150 F.3d 1042, 1051–52 (9th Cir. 1998). Thus, "[i]f the instruction as given sufficiently covers the case so that a jury can intelligently determine the questions presented, the judgment will not be disturbed because further amplification is refused." *Investment Serv. Co. v. Allied Equip. Corp.*, 519 F.2d 508, 511 (9th Cir. 1975). As already discussed, the Court defined each secondary meaning factor for the jury in Jury Instruction No. 13, using the definitions from Ninth Circuit Model Civil Jury Instruction 15.11. Plaintiffs' additional proposed instructions, which *further* defined several of the secondary meaning factors, were unnecessary. Indeed, if additional definitions were needed, the Ninth Circuit no doubt

would have included them in its model instruction. Therefore, Plaintiffs fail to show the Court's instructions constituted an incomplete or incorrect statement of the law.

As to Plaintiffs' contention that defense counsel improperly suggested *Plaintiffs* had the burden of proving a lack of secondary meaning, the Court disagrees. Plaintiffs make much of defense counsel's statement: "I say factor one could very well be in favor of DePalmas on secondary meaning. ***But that's not what their burden is***, because it said, the presence or absence of any particular factor does not resolve secondary meaning." [Ex. E to Hedrick Decl. at 21:4-8. (emphasis added).] The Court finds defense counsel's remark did not amount to a misstatement of the law. Rather, it merely reiterated the standard for determining secondary meaning almost verbatim from Ninth Circuit Model Civil Jury Instruction No. 15.11 ("The presence or absence of any particular factor should not necessarily resolve whether [*identify the alleged trademark*] has acquired secondary meaning."). To the extent defense counsel did misstate the burden of proof, the error was harmless because the Court specifically instructed the jury on the proper burden: "*Franmar* has the burden of proving that the Original Garden Broom's claimed trade dress has acquired secondary meaning." [Doc. 207 at p. 16 (emphasis added).]; *see also, e.g., U.S. v. Manning*, 56 F.3d 1188, 1199 (9th Cir. 1995) (finding no plain error where prosecutor misstated burden of proof, but court gave correct jury instructions on burden of proof).

For the previous reasons, the Court finds the jury's verdict is supported by substantial evidence and is not contrary to the clear weight of the evidence, and the trial was fair to Plaintiffs. Accordingly, neither judgment as a matter of law nor a new trial are warranted.

## IV. CONCLUSION

For the previous reasons, Plaintiffs' motion for judgment as a matter of law or, in the alternative, for a new trial, is **DENIED**.

**IT IS SO ORDERED.**

DATED: April 28, 2019

HON. ROGER T. BENITEZ
United States District Judge