UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>FRANMAR INTERNATIONAL IMPORTERS, LTD. et al.,<br><br>Defendants. | Case No.: 3:16-cv-00480-BEN-WVG<br><br>**ORDER DENYING COUNTERCLAIMANT'S MOTION TO MODIFY OR CLARIFY THE INJUNCTION**<br>**[Doc. 255]** |
| FRANMAR INTERNATIONAL IMPORTERS, LTD.,<br><br>Counterclaimant,<br><br>v.<br><br>H.I.S.C., INC. and DEPALMA ENTERPRISES, INC.,<br><br>Counterclaim Defendants. | |

Counterclaimant Franmar International Importers, Ltd. moves for an order modifying or clarifying the permanent injunction ordered by this Court. Doc. 255; *see*

Doc. 230 (Order Granting Permanent Injunction).[1] As relevant here, the Order permanently enjoins and restrains H.I.S.C., Inc. and DePalma Enterprises, Inc., and their officers, agents, servants, employees, and persons in active concert or participation with it from:

1. Advertising, soliciting, marketing, selling, offering for sale or otherwise using in the United States the Trade Dress in connection with any garden broom products;
2. Contacting or otherwise engaging any third parties to advertise, solicit, market, sell, offer for sale or otherwise use in the United States the Trade Dress in connection with any garden broom products;
3. Representing themselves in the United States as owners of the Trade Dress. **For the avoidance of doubt, the Trade Dress does not include any whisk broom products and/or any broom products containing color and/or colored components, such as, by way of example, colored twine or binding.**

Doc. 230 (emphasis added).

Although the DePalmas acknowledge that they are enjoined from selling the Ultimate Garden Broom with natural, uncolored twine or binding, they claim that by painting their brooms' coconut shell caps black, their sale of those brooms does not violate the injunction's clear terms. Franmar disagrees, characterizing the Court's injunction as excluding from coverage *only* those brooms with "colored twine or binding," which the DePalmas carried at the time of the Court's Order. Doc. 255-1 at p. 5.

The Court's prior rulings and the events surrounding its entry of an injunction are relevant here. At no point during the pendency of this litigation has Franmar asserted that colorized brooms or whisks are part of its protected trade dress. In fact, neither colorized brooms nor whisks are mentioned within Franmar's counterclaims. Prior to trial, the Court granted the DePalmas' motion in limine to exclude evidence of brooms containing

---

[1] This case is currently on appeal before the Ninth Circuit. Accordingly, Counterclaimant's motion for attorneys' fees, expert fees, and costs is DENIED without prejudice to refiling their motion after the appeal has concluded. Doc. 221.

2

3:16-cv-00480-BEN-WVG

"colorized" components, and the Court enforced that order with only limited exceptions at trial. *See* Doc. 146. Indeed, in its opposition to that motion in limine, Franmar conceded that it had not located any cases "holding that trade dress can be expanded to include derivative or spin-off products." Doc. 179 at 2. Rather, Franmar argued that evidence about the colorized brooms was relevant to support its unfair competition claim and to depict "the story of the development of the ekel broom for marketing and sale." *Id.* Thus, the Court is not persuaded that, after a trial on the merits and years of litigation, brooms with colorized components should now be covered by the injunction, particularly because Franmar has never asserted its trade dress included products with color modifications.

Following trial, the parties briefed Franmar's motion for a permanent injunction. In response to the motion, the DePalmas proposed adding, "For the avoidance of doubt, the Trade Dress does not include any whisk broom products and/or any broom products containing color and/or colored components, such as, by way of example, colored twine or binding." Franmar offered no response or opposition to the suggested addition, which the Court found appropriate due to its consistency with the law of the case and theories presented at trial. After the Court entered the injunction including the DePalmas' addition, Franmar did not move for reconsideration or file any other motion seeking clarification. Nearly four months after the injunction's entry, Franmar filed the instant motion.

Now Franmar contends the injunction should include colored variations of its trade dress, including painting the brooms' coconut shell caps black. At present, the injunction's language in paragraph 3 is plain and was included "for the avoidance of doubt" to specifically *exclude* any colored variation of its trade dress. Franmar's desired modification of the injunction contradicts the injunction's plain terms, which specifically provide that, "[f]*or the avoidance of doubt*, the Trade Dress does *not* include any whisk broom products and/or any broom products containing color and/or colored *components . . .*" Doc. 230 (emphasis added). Thus, the language of the order is clear and needs no clarification. A broom with a colored component is not covered by the injunction. If, however, color is added to a broom in such a manner that the colorization is inconspicuous

3

or insignificant, Franmar may file a motion for contempt.

Franmar next argues that changes in color to a product are not sufficient trade dress modifications. That was a subject to address before entry of the injunction. Moreover, the authorities Franmar relies upon are inapposite. In stark contrast to the clear terms and limitations of Franmar's injunction, which allows imitations using different colors, the specific terms of the cited cases' injunctions expressly prohibit the sale of "colorable imitations" of the accused products.[2] *See, e.g., Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320, 1321-23 (9th Cir. 1997) (court injunction entered pursuant to parties' agreed-upon consent judgment barring the competitor from "making, distributing, selling, or advertising any oil lamp that was a 'simulation, reproduction . . . or colorable imitation' of the Wolfard Lamp design," and granting motion for contempt where competitor sold lamps shaped like an inverted tear drop instead of a sphere); *Jerry's Famous Deli, Inc. v. Papanicolaou*, 383 F.3d 998 (9th Cir. 2004) (finding sufficient evidence supported district court's finding of contempt where infringer continued to use identical menu with only modified font in violation of broad injunction specifically prohibiting the use of "any layout, design or arrangement with respect to its in-house, take-out, or catering menus . . . that infringes upon JFD's proprietary rights and interests in its Trade Dress . . ."). Franmar's remaining authorities are similarly unpersuasive because, for example, they address whether including disclaimers with copied trademarks reduces customer confusion. *See, e.g., Au-tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1077-78 (9th Cir. 2006) (finding "likelihood of consumer confusion" resulting from use of Volkswagen and Audi trademarks, even when products contained disclaimers that the items were not associated with Audi or Volkswagen, where record established Volkswagen

---

[2] The case law language emphasized by Franmar is somewhat misleading. The term, "colorable imitations," refers to something akin to *arguable* imitations, not imitations with a change in color. *See, e.g., Wolfard Glassblowing Co. v. Vanbragt*, 118 F.3d 1320 (9th Cir. 1997) (injunction expressly prohibited the sale of "colorable imitations," which the court found to include the change in shape of the accused lamp's base).

and Audi's "prima facie exclusive right to use the mark in commerce").

Because the Court finds the terms of the injunction order are sufficiently clear and modification is unwarranted, Franmar's motion to modify or clarify the injunction is **DENIED**.

**IT IS SO ORDERED.**

DATED: January 23, 2020

Hon. Roger T. Benitez
United States District Court