UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H.I.S.C., INC.; DEPALMA ENTERPRISES, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>FRANMAR INTERNATIONAL IMPORTERS, LTD.; MARIA RAJANAYAGAM; and RAVI INDUSTRIES LIMITED,<br><br>Defendants. | Case No.: 3:16-cv-0480-BEN-WVG<br><br>**ORDER GRANTING MOTION FOR CONTEMPT**<br><br>**[ECF No. 276]** |

This matter comes before the Court on a Motion for Contempt brought by Defendant-Counterclaimants Franmar International Importers, Ltd. ("Franmar") and Maria Rajanayagam (collectively, "Defendants") against Plaintiff-Counterdefendants H.I.S.C., Inc. and DePalma Enterprises, Inc. (collectively, "Plaintiffs"). Mot., ECF No. 276. Defendants, the prevailing party on their counterclaim for trade dress infringement, *see* Judgment, ECF No. 213, previously obtained a permanent injunction from the Court that prohibited Plaintiffs from, among other things, "[a]dvertising, soliciting, marketing, selling, offering for sale or otherwise using in the United States [Defendants'] Trade

1

Dress in connection with any garden broom products." Inj., ECF No. 230. As set forth below, the motion is **GRANTED**.

## I.  BACKGROUND

Following trial, a jury awarded Defendants $265,977.00 for their counterclaim that Plaintiffs committed trade dress infringement in violation of 15 U.S.C. § 1125(a) (the "Lanham Act"). Verdict, ECF No. 210. On February 22, 2019, the Court entered final judgment on all claims and counterclaims, documenting the award. Judgment, ECF No. 213. Following judgment in their favor on the trade dress counterclaim, Defendants moved for a permanent injunction. Mot., ECF No. 222. After the motion was briefed, the Court entered the injunction at issue here. Inj., ECF No. 230.

The injunction defined Defendants' trade dress as "The Original Garden Broom's ornate weave of the twine, coconut shell mounted on top of the ekel, wide fan shape of the ekel, and smooth broom handle," as depicted in ECF No. 222-5 (hereafter, the "Trade Dress"). Inj., ECF No. 230, 2. The injunction permanently enjoins and restrains Plaintiffs and their officers, agents, servants, employees, and persons in active concert or participation with Plaintiffs from:

1. Advertising, soliciting, marketing, selling, offering for sale or otherwise using in the United States the Trade Dress in connection with any garden broom products;
2. Contacting or otherwise engaging any third parties to advertise, solicit, market, sell, offer for sale or otherwise use in the United States the Trade Dress in connection with any garden broom products; [and/or]
3. Representing themselves in the United States as owners of the Trade Dress.

*Id.* The injunction also contains the following clause: "For the avoidance of doubt, the Trade Dress does not include any whisk broom products and/or any broom products *containing color and/or colored components*, such as, by way of example, colored twine or binding." *Id*. (emphasis added).

Only four months after the injunction issued, Defendants filed a motion to modify or clarify the injunction. Mot., ECF No. 255. Defendants alleged Plaintiffs had been

marketing their "Ultimate Garden Brooms," the infringing products, with a coconut shell cap that had been painted black. Merely painting the coconut caps black (instead of their natural coconut brown color), Defendants argued, violated the injunction. *Id*. at 2.

At that time, the Court declined to modify the injunction. Order, ECF No. 259, 5. The Court reasoned that a "broom with a colored component is not covered by the injunction." *Id*. at 3. It cautioned, however, that if "color is added to a broom in such a manner that the colorization is inconspicuous or insignificant, Franmar may file a motion for contempt." *Id*. at 3-4.

On May 24, 2021, Defendants filed the instant motion for contempt. Mot., ECF No. 276. Defendants' argument is that in lieu of painting the coconut shell top black, Plaintiffs have now inserted "a slidable and removable black cap on the broom handle." *Id*. at 3. They argue that the "addition of the removable cap is so trivial that it amounts to no modification at all." *Id*. For ease of reference, the black cap Plaintiffs have added to their broom handle as shown below:



*See* Ex. 1 to Mot., ECF No. 276-7 at 1.

On December 11 and 13, 2021, the Court held a contempt hearing in which each side presented testimony and evidence regarding the subject order. Counsel for both parties ably presented arguments on behalf of their clients throughout the hearing. At the hearing's conclusion, the Court ruled from the bench, finding the Plaintiffs in contempt of this Court's order. The Court's analysis is discussed below.

3

## II. LEGAL STANDARD

"There is no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt." *Cal. Dep't of Soc. Servs. v. Leavitt*, 523 F.3d 1025, 1033 (9th Cir. 2008) (quoting *Shillitani v. United States*, 384 U.S. 364, 270 (1966)). A party to the original action may invoke the Court's power by initiating a proceeding for civil contempt. *Forever 21, Inc. v. Ultimate Offprice, Inc.*, Case No. 2:10-CV-05485-ODW, 2013 WL 4718366, at *2 (C.D. Cal. Sept. 3, 2013) (citing *Gompers v. Buck's Stove & Range Co.,* 221 U.S. 418, 444–45 (1911)).

To establish contempt, the moving party must demonstrate by clear and convincing evidence that the alleged contemnor violated a specific and definite court order by failing to take "take all reasonable steps within the party's power to comply." *In re Dual–Deck Video Cassette Recorder Antitrust Litig.,* 10 F.3d 693, 695 (9th Cir. 1993). If the moving party successfully makes such a showing, "the burden shifts to the contemnor to demonstrate why they were unable to comply." *Forever 21*, 2013 WL 4718366, at *2 (citing *FTC v. Affordable Media, LLC*, 179 F.3d 1228, 1239 (9th Cir. 1999)).

"The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *Dual-Deck*, 10 F.3d at 695 (quoting *In re Crystal Palace Gambling Hall, Inc.*, 817 F.2d 1361, 1365 (9th Cir. 1987)). Nonetheless, "a person should not be held in contempt if his action 'appears to be based on a good faith and reasonable interpretation of the [court's order].'" *Dual-Deck*, 10 F.3d at 695 (quoting *Vertex Distrib., Inc. v. Falcon Foam Plastics, Inc.,* 689 F.2d 885, 889 (9th Cir. 1982)) (alteration in original). Moreover, "substantial compliance" is a valid defense to a finding of civil contempt. *Vertex*, 689 F.2d at 891.

"In the context of trademark-infringement actions, a party who has once infringed is allowed less leniency for purposes of injunction enforcement than an innocent party." *Forever 21*, 2013 WL 4718366, at *3 (citing *Wolfard Glassblowing Co. v. Vanbragt,* 118 F.3d 1320, 1322 (9th Cir.1997)). After a finding of infringement has been made, a prior infringer "must keep a fair distance from the 'margin line.'" *Wolfard*, 118 F.3d at 1322.

"This requirement exists to protect the plaintiff from the scenario where the enjoined infringer makes an insignificant change and begins a new trademark contest in the context of a contempt hearing." *Forever 21*, 2013 WL 4718366, at *3.

When a court finds a party in contempt, it has "broad equitable power to order appropriate relief in civil contempt proceedings." *SEC v. Hickey*, 322 F.3d 1123, 1128 (9th Cir. 2003). "Appropriate sanctions may be imposed to coerce the contemnor into compliance with the court's order, to compensate the complainant for losses sustained as a result of the contemptuous behavior, or both." *Forever 21*, 2013 WL 4718366, at *3, (citing *United States v. United Mine Workers,* 330 U.S. 258, 303–04 (1947) and *United States. v. Bright,* 596 F.3d 683, 696–97 (9th Cir. 2010)).

### III. ANALYSIS

Defendants argue Plaintiffs are enjoined from selling or advertising brooms containing the Trade Dress, and that Plaintiffs' "addition of the removable cap is so trivial that it amounts to no modification at all." Mot., ECF No. 276, 3. Thus, according to Defendants, Plaintiffs are flouting the Court's injunction and should be required to pay treble Plaintiffs' realized profits, as well as attorneys' fees. *Id.*

In response, Plaintiffs argue (1) they are in compliance with the injunction's authorization of colored components, (2) Defendants are trying to amend the judgment to broaden the scope of the Trade Dress, (3) the injunction does not apply to images posted on the Internet and social media before the injunction issued, (4) Defendants cannot be liable for the conduct of third parties, and (5) the images cited by Defendants are protected speech and do not evidence advertising or marketing.

#### A. Purchased Products

The threshold question for this motion is whether Plaintiffs have violated the Court's injunction. The injunction prohibits Plaintiffs from, *inter alia*, "[a]dvertising, soliciting, marketing, selling, offering for sale or otherwise using in the United States the Trade Dress in connection with any garden broom products." ECF No. 230, 2. "[T]he Trade Dress does *not* include any whisk broom products and/or any broom products

*containing color and/or colored components*, such as, by way of example, colored twine or binding." *Id*. (emphasis added).  However, the Court later caveated the injunction by reiterating that if "color is added to a broom in such a manner that the colorization is inconspicuous or insignificant, Franmar may file a motion for contempt."  Mot., ECF No. 259, 3-4.

Defendants argue that Plaintiffs added only a "slidable black cap on the handle" of their broom, and that a "slight modification" violates the injunction.  Mot., ECF No. 276, 4.  In support, Defendants presented evidence from individuals who attested they purchased Plaintiffs' allegedly infringing brooms after the injunction went into effect.  *See* Decls., ECF Nos. 276-2, 276-3, and 276-4.  These three declarations are supported by exhibits and testimony depicting a removable black cap on the purchased products.  Exs. BB, GG.  While the marketing photos on the websites depict the product with the black cap, *see* ECF No. 276, Exs. A-C, it is likewise clear to the Court that Plaintiffs have merely added a removeable piece of black packaging to their brooms and are selling those brooms in violation of the injunction, *see id*. at Exs. A-1, A-2, A-3, C-1.  The addition of the black cap was an insignificant modification and did nothing to distinguish Plaintiff's product from the protected product with respect to other parts of the trade dress.  Accordingly, these exhibits are clear and convincing evidence of contempt.

Plaintiffs also make the fallback argument that even if their use of black caps violates the injunction, they had a reasonable belief that the removable black caps constituted a color component, and therefore, complied with the injunction.  Opp'n, ECF No. 279, 7.  While the Court's previous order denying the motion to clarify addressed painted caps, it did not address removable color components of the broom.  *See* Order, ECF No. 259, 3.  For the reasons previously stated, it is not arguable that Plaintiffs did not believe the addition of a removable black cap would violate the injunction.

The Court will now address removable color components here:  While Plaintiffs arguendo may have had a reasonable belief their removable black caps complied with the injunction, the Court finds that removable color components are also insignificant

6

modifications to the Trade Dress.  *See id*. at 3-4.  In comparison, Plaintiffs' current version of their product does not run afoul of this Court's injunction.[1]



These brooms contain "color or colored components" that are physically integrated into the broom both at the top of the ekel and in the crossed weave pattern of the binding. Plaintiffs' modifications from the infringing products to the above-pictured brooms demonstrate awareness and understanding of the limits placed on them by this Court's injunction.  Instead, though, Plaintiffs sought to take brooms that violated the injunction and make insignificant modifications.  This Court does not find plausible Plaintiffs' argument they had a reasonable belief the colored caps were allowable under the terms of the injunction.

**B.     Judicial Estoppel, Amending the Judgment, and Scope of the Trade Dress**

Contrary to Plaintiffs' arguments, this ruling does not implicate judicial estoppel, seek to amend the judgment, or broaden the scope of the Trade Dress.  *See* Opp'n, ECF No. 279, 4-9.  Defendants' contention is that "color [was] added to a broom in such a manner that the colorization is inconspicuous or *insignificant*," not that their Trade Dress

---

[1] Image accessed from Plaintiffs' website, https://shopdepalma.com/, on January 10, 2022.  The "Ultimate Colored Coconut Garden Broom" is listed for sale at $29.95.

now includes colored components. Reply, ECF No. 280, 2 (quoting Order, ECF No. 259, 3-4). Depending on how easy it is to remove, a removable black cap may be as insignificant as the plastic packaging surrounding the ekel seen in some versions of Plaintiffs' products. *See, e.g.,* ECF No. 276, Ex. C-1. The Court reaches that conclusion here. What is clear, however, is that going forward, removable color components should be viewed as insignificant modifications to the Trade Dress and inconsistent with Plaintiffs' obligation to "keep a fair distance from the 'margin line.'" *Wolfard*, 118 F.3d at 1323 (quoting *Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963)).

### C. Internet and Social Media Photos

In addition to their purchased product exhibits, Defendants also submitted a declaration and testimony from Defendant Maria Rajanayagam. ECF No. 276-5. Ms. Rajanayagam's declaration is supported by several exhibits depicting advertisements and social media posts promoting the infringing products that contain the Trade Dress. Plaintiffs argue these photos of the Trade Dress on the Internet do not violate the injunction because (1) the photos were posted before the injunction issued, (2) many of the photographs have been "posted by third parties who are beyond [Defendants'] control," and (3) the photos are not being used for advertising or marketing, but instead constitute protected free speech. Opp'n, ECF No. 279, 15-19.

First, the Court finds that photos predating the injunction may still be grounds for contempt. Plaintiffs' argument to the contrary is misplaced. The injunction prohibits "[a]dvertising, soliciting, marketing, selling, offering for sale or otherwise using in the United States the Trade Dress in connection with any garden broom products." Inj., ECF No. 230, 2. On the Internet and in social media, a post from days, weeks, months, or even years ago can still serve to advertise a product today. *Cf. Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1116 n.5 (noting that one prominent "influencer" receives $300,000 to $500,000 for a single Instagram post endorsing a company's product – a sum surely including both the post itself and an agreement to continue allowing the post to be visible to consumers for a substantial duration of time). This may be different from a

television or radio advertisement that has a fixed air date and time, but the Court's conclusion still follows naturally. *See id.* ("While such social media posts may not have the indicia of a traditional advertisement, there can be little doubt that these paid posts are in fact advertisements."). Accordingly, the Court finds Defendants' images that continue to advertise or market Plaintiffs' Trade Dress violate the injunction even if those photos were taken or originally posted before the injunction issued.[2]

Second, Defendants submitted numerous examples of posts by Plaintiffs' officers and employees that violate the Court's clarified interpretation of the injunction. *See* ECF No. 279, Exs. D, H-M. While Plaintiffs cursorily argue this evidence constitutes actions by third parties over which Defendants have no control, the Court disagrees. Opp'n, ECF No. 279, 16. Defendants submitted ample evidence showing (1) advertising and marketing of the Trade Dress (2) by people who appear to be Plaintiffs' officers and employees. *See, e.g.*, Decl., ECF No. 276-5, ¶ 10-11, Exs. H-1 through H-8. Even if Defendants have not carried their burden to show an employee or agency relationship in each example submitted, they have certainly met that burden for posts from Ms. DePalma, Mr. Nixdorf, and Ms. England. *See* Decl., ECF No. 276-5; ECF No. 276, Exs. D, H, and I. Thus, Defendants have provided evidence of at least some advertising and marketing posts by Plaintiffs' officers, employees, or agents that violate the injunction.

Third, these social media posts do not constitute protected speech. For purposes of the Lanham Act, the Ninth Circuit has held that "advertising" or "promotion" is "(1) commercial speech, (2) by a defendant who is in commercial competition with plaintiff,

---

[2] For the sake of clarity, the Court finds the following images to be examples of marketing or advertising of the Trade Dress posted before the injunction issued that, nonetheless, violate the injunction: ECF No. 279, Ex. D-1 (Instagram profile photo), Ex. D-2 (Instagram photo); Ex. I-1 through I-30 (Facebook photos); Exs. J-1 through J-3 (Facebook photos); Exs. K-1 through K-5 (Facebook photos); Exs. L-1 through L-5 (Facebook photos); and Exs. M-1 through M-5 (Facebook photos). If these photos continue to be publicized in a manner that advertises or markets the Trade Dress, Defendants may bring another motion for contempt.

(3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public." *Ariix*, 985 F.3d at 1115 (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).  While there is no bright line test for what constitutes commercial speech, "courts 'try to give effect to a common-sense distinction between commercial speech and other varieties of speech.'" *Alfasigma USA, Inc. v. First Databank, Inc.*, --- F. Supp. 3d ----, 2021 WL 930453, at *4 (N.D. Cal. 2021) (quoting *Ariix*, 985 F.3d at 1115).

Here, the social media posts at issue are unquestionably commercial speech.  For example, Defendants submitted as evidence of contempt Facebook posts made by Ms. DePalma, one of Plaintiffs' officers.  *See* ECF No. 276, Ex. I.  That exhibit includes a photograph of a woman holding six brooms containing the Trade Dress.  ECF No. 276, Ex. I-4.  The caption beneath the photo (presumably written by Ms. DePalma) reads, "Loving it!  She bought 6 brooms for her son in laws [sic]!  Our Ultimate Coconut Garden [B]room is a great holiday gift!" *Id*.  All common sense indicates this is commercial speech.  *See Ariix*, 985 F.3d at 1115.  Plaintiffs incorrectly argue that most of the images submitted by Defendants "are of happy people involved in various activities." Opp'n, ECF No. 279, 17.  On the contrary, most of the images are of people trying to sell brooms.  These posts constitute commercial speech and violate the injunction.

The remaining elements for "advertising" or "promotion" easily follow.  *See Ariix*, 985 F.3d at 1115.  First, Plaintiffs and Defendants are obviously in commercial competition with one another.  The Court need not look further than this protracted litigation as evidence of that.  Second, the Facebook caption discussed above provides but one example of Plaintiffs' attempts to use social media to influence consumers to buy their goods.  Third, Ms. DePalma has more than 6,862 "followers" on Instagram who can see her posts there.  ECF No. 276, Ex. D-1.  The Court is satisfied that this large following allows her posts to be "sufficiently disseminated to the relevant purchasing public." *Ariix*, 985 F.3d at 1115.  Accordingly, the social media posts submitted by

Defendants as evidence of contempt qualify as "advertising" or "marketing" for purposes of the Lanham Act.

For the foregoing reasons, the social media and Internet posts attributable to Plaintiffs' officers, agents, and employees violate the injunction. "[A]n infringer must keep a fair distance from the 'margin line.'" *Wolfard*, 118 F.3d at 1322 (citing *Plough, Inc. v. Kreis Labs.*, 314 F.2d 635, 639 (9th Cir. 1963)). Plaintiffs have not done so here. Accordingly, the Court finds Plaintiffs in contempt.

### D. Damages

Defendants ask this Court to award $106,920 in damages. This figure is based on the Plaintiffs selling approximately 2,160 brooms, split equally between trade shows and internet sales. This amounts to a $35,640 gross profit and then treble damages to arrive at the requested amount. Defendants argue that under the Lanham Act, they are entitled to this amount and that Plaintiffs have the burden to establish any offsetting overhead costs, which they have failed to do. Plaintiffs testified they lost approximately $7 per broom in attempting to resell the infringing brooms.

Based on the parties' briefing, testimony, and evidence, this Court reserves the issue of damages at this time. The Court will take the matter of damages under advisement and orders the parties to meet and confer regarding appropriate damages. Should the parties fail to agree on damages, this Court will order discovery of Plaintiffs' and Defendants' corporate records. The parties will provide the Court with a status update regarding damages negotiations no later than March 1, 2022.

## IV. CONCLUSION

For the foregoing reasons, Defendants' Motion for Contempt is **GRANTED**. However, the Court clarifies the injunction as follows:

1. Removable color components are insignificant modifications to the Trade Dress. Any further sale or marketing activity prohibited by the injunction related to removable color components will be grounds for contempt.

2. Plaintiffs' social media and Internet posts advertising, marketing, or selling

their infringing products containing the Trade Dress violate the injunction, no matter when the post was originally created.

3. Plaintiffs shall have seven days from the date of this Order to comply with the terms of the injunction as clarified herein.

4. Each party shall bear its own attorney's fees and costs for this motion.

5. The parties will meet and confer regarding damages; the parties will provide a status update no later than March 1, 2022.

**IT IS SO ORDERED.**

DATED: January 10, 2022

_____
**HON. ROGER T. BENITEZ**
United States District Judge